[Cite as *State ex rel. Daily Servs., L.L.C. v. Buehrer*, 2015-Ohio-4956.]

# IN THE COURT OF APPEALS OF OHIO

# TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Daily Services, LLC, | : | |
| Relator, | : | |
| v. | : | No. 14AP-405 |
| Stephen Buehrer, Administrator, Ohio Bureau of Workers' Compensation, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

# D E C I S I O N

## Rendered on December 1, 2015

*Law Office of W. Evan Price II, LLC,* and *W. Evan Price, II,* for relator.

*Porter, Wright, Morris & Arthur LLP, James A. King* and *David S. Bloomfield, Jr.,* for respondent.

# IN MANDAMUS
# ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, P.J.

{¶ 1}   Relator, Daily Services, LLC ("Daily Services"), has filed an original action requesting that this court issue a writ of mandamus ordering respondent, the Administrator of the Ohio Bureau of Workers' Compensation ("respondent"), to vacate a March 2013 hearing order of the Adjudicating Committee ("adjudicating committee") of the Ohio Bureau of Workers' Compensation ("BWC"), as well as a November 2013 hearing order of the BWC's Administrator's Designee ("administrator's designee"), determining that Daily Services wholly succeeded I-Force, LLC ("I-Force").

{¶ 2}   This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering respondent to vacate the March 2013 hearing order of the adjudicating committee and the November 2013 hearing order of the administrator's designee.

{¶ 3}   Respondent has filed four objections to the magistrate's decision, arguing that the magistrate erred in: (1) applying the continuing jurisdiction doctrine under R.C. 4123.52 to vacate the orders of the adjudicating committee and the administrator's designee; (2) finding that BWC delayed an unreasonable period of time to exercise its continuing jurisdiction to adjudicate Daily Services' successor-liability protest; (3) failing to find numerous critical facts supporting the merits of BWC's determination that Daily Services succeeded I-Force; and (4) failing to conclude, as a matter of law, that Daily Services succeeded I-Force.

{¶ 4}   The following background facts and procedural history are taken from the magistrate's findings of fact as well as from the record of proceedings.  Ryan Mason was the owner of I-Force, a company that provided temporary staffing services to other businesses.   I-Force opened a workers' compensation policy with BWC, effective December 19, 2005.  Due to a poor claims history, I-Force lost its group rating status on June 30, 2008, and the company closed its business operations on March 23, 2009.  Prior to the closing, the I-Force headquarters was located in a building adjacent to the offices of Daily Services, a company also owned by Mason and located on Morse Road, Columbus, Ohio.

{¶ 5}   Daily Services is in the business of providing temporary staffing services to its clients and has maintained a workers' compensation policy with BWC since April 3, 2006.  In April and May 2009, BWC conducted an audit of Daily Services.  The BWC issued a subpoena to Daily Services on April 29, 2009, seeking payroll records and client lists, and investigators from the BWC's Special Investigations Unit subsequently conducted interviews of former I-Force employees.

{¶ 6}   In May 2009, BWC made a determination that Daily Services was the successor to I-Force and was responsible for I-Force's unpaid premiums.  In June 2009,

BWC filed a certificate of judgment against I-Force for more than $3.8 million.[1]  In a letter dated June 15, 2009, Daily Services protested BWC's determination that it was a successor-in-interest to I-Force within the meaning of Ohio Adm.Code 4123-17-02(C). The BWC's adjudicating committee subsequently held a hearing on the matter.  On September 1, 2009, BWC filed a suit in common pleas case No. 09CVH09-13229, seeking to hold Daily Services liable as a successor-in-interest.[2]

{¶ 7}  On October 15, 2009, the adjudicating committee issued an order, holding in part: "Based on the testimony at the hearing and the materials submitted with the protest, the Adjudication Committee affirms the experience combination."  Daily Services did not appeal the adjudicating committee's 2009 order.

{¶ 8}  On November 6, 2009, the BWC filed a certificate of judgment against Daily Services in common pleas case No. 09JG-11-46435.  Daily Services subsequently filed a motion to vacate the certificate of judgment.

{¶ 9}  On July 13, 2010, BWC filed a certificate of judgment against Daily Services for over $3.1 million in common pleas case No. 10JG-06-26568.  On August 18, 2010, Daily Services filed a motion to vacate the certificate of judgment pursuant to Civ.R. 60(B).  The trial court subsequently granted the motion to vacate on the basis that the BWC failed to properly serve Daily Services with an assessment.

{¶ 10}  On September 21, 2010, BWC served Daily Services with an assessment in the amount of $3,170,366.53.  Daily Services filed a petition objecting to the assessment, and the adjudicating committee conducted a hearing on January 13, 2011.

{¶ 11} On February 8, 2011, the trial court, in common pleas case No. 09JG-11-46435, granted Daily Services' request for Civ.R. 60(B) relief from the certificate of judgment filed by BWC on November 6, 2009.  In its decision (hereinafter "the Judge Bessey decision"), the trial court found in part that the BWC "mistakenly claims that the hearing before the Adjudicating Committee of the BWC resulted in a finding that [Daily Services] was a successor to I-Force."  Rather, the trial court determined, the 2009 order of the adjudicating committee "makes no reference to the issue of whether [Daily

---

[1] In October 2009, BWC filed a release and satisfaction, discharging its judgment against I-Force.
[2] On March 31, 2010, the trial court entered a preliminary injunction in common pleas case No. 09CVH09-13229, under which Mason agreed to make monthly payments toward past due premiums.  On August 26, 2010, the parties entered into an agreement to stay the action. On March 21, 2011, BWC voluntarily dismissed the action without prejudice pursuant to Civ.R. 41(A).

Services] was a successor to I-Force and thus liable for I-Force's deficiencies." The trial court further held "there is no basis for the BWC to claim that it administratively decided the issue in its favor, when the issue was and still is pending before the Court in [case No.] 09CVH09-13229."

{¶ 12} By order mailed February 9, 2011, the adjudicating committee upheld the BWC's September 21, 2010 assessment, finding that the adjudicating committee's October 15, 2009 order affirming the experience combination operated to transfer I-Force's debt and liabilities to Daily Services. Daily Services appealed the decision of the adjudicating committee, and the administrator's designee conducted a hearing on April 19, 2011. By order mailed June 14, 2011, the administrator's designee upheld the order of the adjudicating committee, finding in part that "the issue of liability under [Ohio Adm.Code] 4123-17-03(C) was addressed by the Adjudicating Committee in its order dated October 15, 2009 when it applied OAC 4123-17-03(B) and determined that the employer was a successor employer under the rule."

{¶ 13} On February 18, 2011, the BWC filed a judgment against Daily Services in the amount of $3,170,366.53. On March 9, 2011, Daily Services filed a motion to vacate pursuant to Civ.R. 60(B). On November 21, 2011, the trial court rendered a decision in common pleas case No. 11JG-02-7617 (hereinafter "the Judge Reece decision"), granting the motion to vacate. In its decision, the trial court noted in part that "[t]he issue of whether a successor-in-interest finding was made on October 15, 2009, was argued before Judge Bessey [who] found that such a determination had not been made in the October 15, 2009 order." The court therefore granted the motion to vacate on the basis that Daily Services had presented a meritorious defense by way of the BWC's "failure to follow the requirements" of R.C. 4123.37 and 4123.291 in filing a praecipe for judgment "prior to said judgment having become final." This court, by decision rendered September 18, 2012, affirmed the trial court's determination that Daily Services had a meritorious defense. *See Ohio Bur. of Workers' Comp. v. Daily Servs., LLC,* 10th Dist. No. 11AP-1122, 2012-Ohio-4242.

{¶ 14} On December 21, 2011, Daily Services filed a complaint for unjust enrichment and declaratory judgment against BWC in common pleas case No. 11CV-015913. On January 19, 2012, BWC filed an answer and counterclaim. In the counterclaim, BWC alleged causes of action for fraudulent transfers, statutory successor

liability, common law successor liability, and successor liability as contemplated under Ohio Adm.Code 4123-17-02. The trial court subsequently granted summary judgment in favor of BWC and dismissed Daily Services' unjust enrichment claim. The court also dismissed BWC's counterclaims for successor liability, holding in part that "the Adjudicating Committee is the proper forum for adjudicating the issue of [Daily Services'] successor liability." Daily Services appealed the trial court's decision. In *Daily Servs., LLC v. Ohio Bur. of Workers' Comp.,* 10th Dist. No. 13AP-509, 2013-Ohio-5716, this court affirmed the judgment of the trial court, finding that the BWC was entitled to judgment as a matter of law on Daily Services' claim for unjust enrichment.

{¶ 15} By letter dated January 15, 2013, the secretary of the adjudicating committee informed counsel for Daily Services that the adjudicating committee would schedule a hearing as a result of decisions rendered by "the Franklin County Court of Common Pleas in Case No. 11JG-02-7617 and in Case No. 09JG-46435" in which those courts "concluded that the Adjudicating Committee's October 15, 2009 Order never resolved whether Daily Services is the successor to I-Force within the meaning of O.A.C. 4123-17-02(C). That issue, in the view of the BWC, remains pending."

{¶ 16} On January 29, 2013, Daily Services filed a complaint for a writ of prohibition with the Supreme Court of Ohio, asserting that the adjudicating committee lacked jurisdiction to schedule and conduct a hearing on the issue of successor liability. On February 13, 2013, respondent filed a motion to dismiss the complaint. On March 15, 2013, the Supreme Court dismissed Daily Services' prohibition action pursuant to Civ.R. 12(B)(6).

{¶ 17} On March 20, 2013, the adjudicating committee conducted a hearing "to provide the employer the opportunity to fully administratively adjudicate the Bureau's determination on successor liability under O.A.C. 4123-17-02(C)." Following that hearing, the adjudicating committee issued an order (hereinafter "the March 2013 hearing order") denying the protest filed by Daily Services. In its order, the adjudicating committee determined it had jurisdiction over Daily Services' protest because "[t]he question of successor liability remains unresolved." With respect to the merits of the case, the adjudicating committee concluded that "Daily Services is a successor-in-interest to I-Force for workers' compensation purposes under Ohio Adm.Code 4123-17-02(C) and thus, liable for I-Force's obligations."

{¶ 18} Daily Services filed an appeal of that order to the administrator's designee pursuant to R.C. 4123.291. Following a November 14, 2013 hearing, the administrator's designee issued an order (hereinafter "the November 2013 hearing order") affirming the adjudicating committee's March 2013 hearing order.

{¶ 19} On May 19, 2014, Daily Services filed its complaint in mandamus with this court, asserting that respondent exceeded its jurisdiction in holding the March 20, 2013 hearing. In the magistrate's decision, the magistrate framed the issue presented as whether the BWC had continuing jurisdiction under R.C. 4123.52 "to adjudicate that portion of relator's June 2009 protest regarding the [BWC's] transfer of I-Force's premium obligations under Ohio Adm.Code 4123-17-02(C) long after the [BWC], through its adjudicating committee of October 15, 2009 had issued a final order adjudicating the protest."[3] The magistrate concluded that the BWC "lacked R.C. 4123.52 continuing jurisdiction to convene an adjudicating committee to revisit the October 15, 2009 final order of the adjudicating committee."

{¶ 20} Respondent's first and second objections are interrelated, and we will consider them jointly. Under the first objection, respondent asserts the magistrate erred in applying the continuing jurisdiction doctrine of R.C. 4123.52 to vacate both the adjudicating committee's March 2013 hearing order as well as the November 2013 hearing order of the administrator's designee. Respondent argues that the magistrate sua sponte raised a continuing jurisdiction issue that Daily Services did not allege in its complaint, and then based the recommendation for issuance of a writ of mandamus on an issue not applicable. Under the second objection, respondent argues the magistrate erred in finding that the BWC unreasonably delayed its exercise of jurisdiction to adjudicate the successor-liability protest.

{¶ 21} Respondent advances several arguments challenging the magistrate's application of R.C. 4123.52 to the instant proceedings. Respondent argues that R.C. 4123.52, the statute establishing the continuing jurisdiction of the Industrial Commission of Ohio ("Industrial Commission"), contains no language addressing the adjudicating committee. Further, citing the absence of any cases applying R.C. 4123.52 in the context

---

[3] In analyzing this issue, the magistrate noted the prerequisites for the Industrial Commission of Ohio's exercise of continuing jurisdiction under R.C. 4123.52, as set forth in *State ex rel. Gobich v. Indus. Comm.,* 103 Ohio St.3d 585, 2004-Ohio-5900, ¶ 14 ("(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal").

of proceedings by the adjudicating committee, respondent contends the magistrate erred by seeking to import the limitations under R.C. 4123.52 into a proceeding governed by R.C. 4123.291. In the alternative, respondent argues that, even assuming the applicability of R.C. 4123.52, the continuing jurisdiction doctrine does not apply because the adjudicating committee did not modify or change a former finding or order; rather, respondent maintains, the adjudicating committee adjudicated the successor-liability issue for the first time when it issued its order following the March 20, 2013 hearing.

{¶ 22} In response, Daily Services argues that respondent misconstrues the import of the magistrate's ruling. Specifically, Daily Services argues that the magistrate did not apply the continuing jurisdiction doctrine to vacate BWC orders; instead, it maintains, after the magistrate concluded that jurisdiction was otherwise lacking, the magistrate held that the continuing jurisdiction doctrine did not operate to confer jurisdiction on the BWC. According to Daily Services, the issue is not whether the continuing jurisdiction doctrine of R.C. 4123.52 is applicable but, rather, whether there was another source of jurisdiction authorizing the BWC to hold the 2013 hearings with respect to the 2009 protest action.

{¶ 23} We begin with the general proposition that, "[l]ike all statutorily created agencies, BWC can exercise only those powers conferred upon it by the General Assembly." *State ex rel. V&A Risk Servs. v. Ohio Bur. of Workers' Comp.,* 10th Dist. No. 11AP-742, 2012-Ohio-3583, ¶ 30. As such, "[i]t must conform its operations to the procedures set out in the statutes or rules adopted pursuant to statutory authority." *Id.*

{¶ 24} R.C. 4123.52(A) states that "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the *commission* may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." (Emphasis added.) As noted by one commentator, "[e]ven though R.C. § 4123.52 confers continuing jurisdiction on the Commission and the Administrator, the Commission's jurisdiction differs from that of the Administrator." Fulton, *Ohio Workers' Compensation Law*, Section 5.5, at 165 (4th Ed.2011).

{¶ 25} The issue of whether the adjudicating committee was authorized to conduct the 2013 hearing in the instant case does not, in our view, implicate the industrial commission's statutory authorization under R.C. 4123.52 to modify or change former

findings or orders. Rather, it involves a consideration of the provisions of R.C. 4123.291, which "authorizes the Administrator to appoint an 'adjudicating committee' to consider [certain] risk premium matters." Fulton at 640, Section 14.10.[4] Specifically, R.C. 4123.291(A) authorizes "[a]n adjudicating committee appointed by the administrator of workers' compensation to hear any matter specified in divisions (B)(1) to (7) of this section." Under this provision, "[a]n employer desiring to file a * * * protest, or petition regarding any matter specified in divisions (B)(1) to (7) of this section shall file the * * * protest * * * to the adjudicating committee on or before twenty-four months after the administrator sends notice of the determination." R.C. 4123.291(A). Included among the matters specified under divisions (B)(1) to (7) are "[a]n employer protest relating to an audit finding * * *, experience rating, or transfer or combination of risk experience," (R.C. 4123.291(B)(5)), and "[a]ny decision relating to any other risk premium matter under Chapters 4121., 4123., and 4131. of the Revised Code." (R.C. 4123.291(B)(6)).

{¶ 26} The adjudicating committee "may issue decisions without formal hearing, but it must afford an employer a formal hearing if the employer so requests." Fulton at 670, Section 14.24. The decision of the adjudicating committee "shall be the decision of the administrator." Ohio Adm.Code 4123-14-06(E). The employer may file a written appeal of the decision of the adjudicating committee, and "the administrator or the administrator's designee shall hear the appeal of the decision and shall conduct a hearing for such purpose." Ohio Adm.Code 4123-14-06(E). See also R.C. 4123.291(B) ("An employer who is adversely affected by a decision of an adjudicating committee appointed by the administrator may appeal the decision of the committee to the administrator or the administrator's designee," and the "administrator or the designee shall hold a hearing.").

{¶ 27} During the March 20, 2013 hearing before the adjudicating committee, counsel for Daily Services argued that the adjudicating committee lacked jurisdiction "to hold another hearing, a second hearing, on the June 2009 protest," in order to address the issue of successor liability. In the March 2013 hearing order, the adjudicating committee rejected this contention, holding in relevant part:

---

[4] Ohio Adm.Code 4123-14-06(B) provides that "[t]he adjudicating committee shall consist of three members appointed by the administrator." Pursuant to Ohio Adm.Code 4123-14-06(C), the three-member adjudicating committee "shall hold meetings and hearings to determine matters referred to it by the administrator."

Daily Services asserted in its hearing brief that this Adjudicating Committee does not have jurisdiction to hold another hearing. This assertion is moot in light of the Supreme Court's denial of Daily Service's prohibition action and the dismissal of the Bureau's counterclaim in case no. 11-CV-015913. The question of successor liability remains unresolved, therefore, the Adjudicating Committee retains jurisdiction over Daily Service's original protest of the Bureau's successor determination that was submitted by Daily Services on June 15, 2009. Two separate court decisions found the order from the Adjudicating Committee held October 15, 2009, which was in response to the June 15, 2009 protest, failed to determine whether Daily Services is the successor to I-Force. On May 15, 2013, in case no. 11-CV-015913, the court found "the Adjudicating Committee is the proper forum for adjudicating the issue of Plaintiff's successor liability."

Daily Services' protest has not been fully adjudicated. Courts that have interpreted the order from the Adjudicating Committee held October 15, 2009 have found the Adjudicating Committee did not address Daily Services' protest challenging the Bureau's determination that Daily Services is a successor to I-Force. As a matter of law, the issue remains pending at the Adjudicating Committee processing level.

{¶ 28} During the November 14, 2013 hearing before the administrator's designee, Daily Services again argued that the adjudicating committee lacked jurisdiction to consider the issue of its liability as a successor to I-Force. The administrator's designee disagreed, adopting the analysis of the adjudicating committee and holding in part: "Prior to March 20, 2013, the Adjudicating Committee had not issued a final administrative order addressing the issue of Daily Services' liability under [Ohio Adm.Code] 4123-17-02(C) as successor-in-interest to I-Force; therefore, the Committee had retained, and properly exercised, jurisdiction to do so."

{¶ 29} In its order rejecting Daily Services' jurisdictional challenge, the adjudicating committee relied in part on *State ex. rel. Bur. of Workers' Comp. v. C.W. Fletcher, Inc.,* 4th Dist. No. 96CA32 (Mar. 13, 1997). Under the facts of that case, BWC conducted an audit of C.W. Fletcher, Inc. ("Fletcher"), and ascertained that Fletcher owed unpaid workers' compensation premiums. The BWC assessed Fletcher the amount due, and Fletcher filed a petition with BWC's adjudicating committee objecting to the

assessment. The adjudicating committee, however, never resolved Fletcher's petition. The BWC subsequently obtained a judgment lien against Fletcher, and later garnished Fletcher's bank account. Fletcher then filed an action with the trial court, seeking to have the court either void the judgment lien or grant Civ.R. 60(B) relief; the trial court ultimately granted Fletcher Civ.R. 60(B) relief.

{¶ 30} On appeal, the court in *C.W. Fletcher* held that the trial court did not abuse its discretion in granting Fletcher relief under Civ.R. 60(B). In considering the issue of whether Fletcher had a meritorious defense, the court found that BWC was not entitled to a judgment for an unpaid assessment as it failed to comply with the requirements of R.C. 4123.37. More specifically, the court noted that "a petition objecting to the assessment was filed but no finding was made resolving the petition," and therefore "the BWC was not authorized to file a certified copy of the assessment with the clerk of courts." *C.W. Fletcher.* Rather, the court held, the BWC's "failure to resolve the petition has left the matter pending, thus precluding a judgment." *Id.* In so holding, the court characterized the judgment filed by the BWC as "analogous to an order which neither adjudicates all claims or parties nor has Civ.R. 54(B) 'no just reason for delay' language; the BWC partly adjudicated the matter by making an assessment against Fletcher, but did not resolve the petition." *Id.*

{¶ 31} As noted under the facts, in the instant case, two prior decisions by the Franklin County Court of Common Pleas found that the adjudicating committee's October 15, 2009 order did not adjudicate the issue of successor liability. Specifically, in Judge Bessey's decision, the trial court found that the 2009 order of the adjudicating committee "makes no reference to the issue of whether [Daily Services] was a successor to I-Force and thus liable for I-Force's deficiencies," and that there was "no basis for the BWC to claim that it administratively decided the issue in its favor." The subsequent Judge Reese decision noted that the Judge Bessey decision had addressed the "issue of whether a successor-in-interest finding was made on October 15, 2009," and "Judge Bessey found that such a determination had not been made in the October 15, 2009 order." Further, in a May 2013 decision rendered by the Franklin County Court of Common Pleas, addressing Daily Services' unjust enrichment claim and BWC's counterclaims for successor liability, the trial court observed that "the Adjudicating

Committee is the proper forum for adjudicating the issue of [Daily Services'] successor liability."

{¶ 32} As outlined above, R.C. 4123.291(B)(5) and (6) set forth the administrative procedures with respect to an employer's protest of certain risk premium matters, and the statute authorizes the administrator to appoint an adjudicating committee to consider and decide an employer's protest regarding "an audit finding" or a determination of an "experience rating, or transfer or combination of risk experience," as well as "[a]ny decision relating to any other risk premium matter." In the instant case, Daily Services invoked the jurisdiction of the administrator and the adjudicating committee by filing a protest of the BWC's determination that Daily Services was the successor to I-Force and responsible for its premiums. Following the March 2009 hearing, the adjudicating committee issued a decision in which it "affirm[ed] the experience combination." The BWC subsequently sought to recover unpaid premiums from Daily Services based upon the agency's interpretation of the March 2009 hearing order as having adjudicated the issue of successor liability. However, as determined by two subsequent decisions of the Franklin County Court of Common Pleas, the adjudicating committee's March 2009 hearing order failed to administratively decide the issue of successor liability at issue in the protest.

{¶ 33} As observed by the court in *C.W. Fletcher*, "[a]djudicative functions by administrative agencies allow matters to be resolved by experts in that area and often provide for a less formal hearing atmosphere," but such "lesser level of formality does not relieve the administrative agency from entering a final order on matters presented to it." In the instant case, the adjudicating committee's failure to determine the issue of successor liability prior to the March 2013 hearing "left the matter pending." *Id.* Thus, at the time of that hearing, the adjudicating committee had yet to issue an order that finally and fully adjudicated the rights, duties, and obligations of the parties with respect to the protest. Under these circumstances, we conclude that the adjudicating committee, having obtained jurisdiction of the matter following the filing of the 2009 protest, and in the absence of statutory or administrative regulations to the contrary, retained and properly exercised jurisdiction to hold the March 2013 hearing to adjudicate the issue of successor liability and to issue an order that fully determined the protest. Accordingly, we decline to adopt the magistrate's recommendation that the agency was without jurisdiction to

conduct the 2013 hearing to adjudicate that portion of the protest by Daily Services regarding the BWC's transfer of I-Force's premium obligations.

{¶ 34} Under the second objection, respondent contends the magistrate erred in finding that BWC unreasonably delayed its exercise of continuing jurisdiction. Specifically, respondent points to the following language in the magistrate's decision: "Certainly, as of the date that Judge Bessey issued his judgment on February 8, 2011 * * * the bureau should have been aware that its interpretation of the October 15, 2009 order of the adjudicating committee was not the correct interpretation. Accordingly, it appears that the bureau delayed an unreasonable period of time to exercise its continuing jurisdiction." (Magistrate's Decision at ¶ 89.)

{¶ 35} Respondent challenges the magistrate's reliance on February 8, 2011 (the date that Judge Bessey issued his judgment) as the starting point for the period used to assess any delay by BWC in setting the March 2013 hearing of the adjudicating committee. Respondent maintains there were compelling procedural reasons the hearing took place on March 20, 2013, including related litigation between the parties, a standstill agreement executed by both sides, and a request by Daily Services to delay the hearing.

{¶ 36} In general, under Ohio law, "[i]t is the duty of an administrative agency to hear matters pending before it without unreasonable delay and with due regard to the rights and interests of the litigants." *Immke Circle Leasing, Inc. v. Ohio Bur. of Motor Vehicles,* 10th Dist. No. 05AP-1179, 2006-Ohio-4227, ¶ 13. This court has previously observed that, "[i]n some instances, courts have held long delays to be unlawful when the delay is completely unexplained." *Gourmet Beverage Ctr., Inc. v. Ohio Liquor Control Comm.,* 10th Dist. No. 01AP-1217, 2002-Ohio-3338, ¶ 25. *See also Mowery v. Ohio State Bd. of Pharmacy,* 11th Dist. No. 96-G-2005 (Sept. 30, 1997) (noting that courts "have held that an unexplained and unreasonable delay deprives the affected part of the due process to which he is entitled"). Litigation between parties can be a factor in considering allegations of unreasonable agency delay. *Gourmet Beverage* at ¶ 26 (delay of seven years between decision and hearing on administrative appeal because of protracted litigation between parties did not constitute due process violation).

{¶ 37} As evidenced by the background facts, the instant case has a somewhat lengthy procedural history. While BWC took the position, following the March 2009 hearing order, that the adjudicating committee's finding as to the experience combination

also resolved the issue of successor liability (a view similarly expressed by the administrator's designee in the order following the April 19, 2011 hearing), two subsequent decisions by the court of common pleas found that the issue of successor liability had not been adjudicated. During this time, as noted by respondent, the parties were involved in pending litigation, including (1) an action for unjust enrichment, filed by Daily Services on December 21, 2011, in which BWC filed a counterclaim on the issue of successor liability, and (2) BWC's appeal of the Judge Reece decision, which resulted in a decision rendered by this court on September 18, 2012. The record also reflects that the parties, on October 17, 2012, executed a standstill agreement which remained in effect until January 2013. Further, after the secretary of the adjudicating committee provided notice of a hearing date to determine the issue of successor liability, Daily Services filed a prohibition action in the Supreme Court, which the Supreme Court dismissed on March 15, 2013. Finally, the record supports respondent's contention that the agency, having originally scheduled a hearing date for March 5, 2013, rescheduled the hearing for March 20, 2013, at the request of counsel for Daily Services.

{¶ 38} Upon review of the procedural history of this case, we find that the delay is not "completely unexplained," nor does the record suggest that administrative delay hindered the ability of Daily Services to present its evidence before the adjudicating committee and the administrator's designee as to the issue of successor liability during the 2013 hearing proceedings. *Gourmet Beverage* at ¶ 25. We therefore decline to hold that BWC's failure to schedule the hearing prior to March 20, 2013 constituted unreasonable delay. Having determined that the adjudicating committee was not without jurisdiction to conduct the March 2013 hearing, and further finding no unreasonable delay in the proceedings, we sustain respondent's first and second objections.

{¶ 39} Respondent's third and fourth objections contend the magistrate erred in failing to confirm Daily Services' successor liability for I-Force's premium obligations, as determined by the adjudicating committee and subsequently affirmed by the administrator's designee. The magistrate, however, having concluded that the adjudicating committee lacked continuing jurisdiction to conduct the March 2013 hearing, never reached the merits of the successor liability issue. In light of this court's disposition of the first and second objections, we remand this matter to the magistrate to address, in the first instance, the merits of the successor liability determination by the

adjudication committee (as affirmed by the administrator's designee). Because the magistrate has not yet addressed the merits of this action, respondent's third and fourth objections are rendered moot.

{¶ 40} Based upon the foregoing, we adopt the magistrate's findings of fact, but not the conclusions of law, and we decline to adopt the magistrate's recommendation that this court issue a writ of mandamus. Respondent's first and second objections are sustained, the third and fourth objections are rendered moot, and this matter is remanded to the magistrate for further proceedings in accordance with law, consistent with this decision.

*Objections sustained in part and rendered moot in part;*
*action remanded with instructions.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Daily Services, LLC, | : | |
| Relator, | : | |
| v. | : | No. 14AP-405 |
| Stephen Buehrer, Administrator, Ohio Bureau of Workers' Compensation, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on April 27, 2015

*Law Office of W. Evan Price II, LLC,* and *W. Evan Price, II,* for relator.

*Porter, Wright, Morris & Arthur LLP, James A. King* and *David S. Bloomfield, Jr.,* for respondent.

### IN MANDAMUS

{¶ 41} In this original action, relator, Daily Services, LLC ("Daily Services" or "relator"), requests a writ of mandamus ordering respondent, the Administrator of the Ohio Bureau of Workers' Compensation ("administrator" or "bureau") to vacate the March 20, 2013 order of the adjudicating committee and the November 14, 2013 order of the administrator's designee that revisited the adjudication of relator's June 15, 2009 protest of the bureau's finding that it is the successor employer to I-Force LLC ("I-Force"). Relator claims that the bureau lacked jurisdiction to convene its March 20, 2013

adjudicating committee.    In the alternative, relator requests that the writ order respondent to vacate the November 14, 2013 order of its administrator's designee that determined that Daily Services wholly succeeded I-Force, and that pursuant to former Ohio Adm.Code 4123-17-02(C)(1), Daily Services is liable for the unpaid premiums and obligations of I-Force.  Relator requests that, in the alternative, the writ order respondent to enter an order finding that Daily Services did not wholly succeed I-Force and is thus not liable for the unpaid premiums and obligations of I-Force.

Findings of Fact:

{¶ 42} 1.  I-Force was in the business of providing temporary staffing services to its customer employers.  Up to the time it closed its business on or about March 23, 2009, I-Force was owned by Ryan Mason.  I-Force opened a workers' compensation policy with the bureau effective December 19, 2005.

{¶ 43} 2.  Also owned by Mason, Daily Services has had a workers' compensation policy with the bureau since April 3, 2006. Daily Services is also in the business of providing temporary staffing services to its customer employers.

{¶ 44} 3.  Due to a poor claims history, I-Force lost its group rating status on June 30, 2008.

{¶ 45} 4.  For the payroll reporting period for the second half of 2008, premiums were due by February 28, 2009.  I-Force filed a payroll report, but did not make the payroll payment for the second half of 2008.

{¶ 46} 5.  Prior to its closing, the I-Force headquarters was located in a building adjacent to Daily Services' offices on Morse Road in Columbus, Ohio.

{¶ 47} 6.  In April and May 2009, the bureau conducted an audit of Daily Services.

{¶ 48} 7.  On April 29, 2009, the bureau executed a subpoena.  Payroll records and client lists were obtained.

{¶ 49} 8.  In May 2009, investigators from the bureau's Special Investigations Unit conducted interviews of former I-Force employees.

{¶ 50} 9. By letter dated May 22, 2009, Michael Glass, the bureau's director of underwriting and premium audit department, informed relator:

> We received notification of a business acquisition/merger or purchase/sale, and have determined you are the successor employer for Ohio workers' compensation purposes.

As the successor employer for the entire operation, you are responsible for all existing and future financial rights and obligations of the former employer. BWC will base your workers' compensation rate(s) on the former employer's experience or the combined experience of all employers involved in the transaction if you had established coverage prior to acquiring the business. As a result, BWC will re-calculate your premium rates, which may result in a rate change.

{¶ 51} 10. On or about May 22, 2009, the bureau mailed to Daily Services an invoice indicating that Daily Services owed the bureau $3,486,852.87. The balance was due June 19, 2009.

{¶ 52} 11. By letter dated June 15, 2009, relator's counsel protested the invoice:

The invoice contains language stating "as the successor to I-FORCE LLC, you are responsible for any total balance shown on the invoice Invoice/Statement for this policy." Daily Services is unaware of any prior determination that it is the successor to I-Force LLC and hereby protests to and appeals any such determination. Daily submits that the amount invoiced is a liability solely of I-Force, not Daily, and requests that the matter be referred to the Bureau's Adjudicating Committee for resolution.

{¶ 53} 12. On June 25, 2009, the bureau filed with the clerk of the Franklin County Court of Common Pleas ("common pleas court") a certificate of judgment against I-Force in the amount of $3,886,816.08.

{¶ 54} 13. On October 13, 2009, the bureau discharged its judgment lien against I-Force.

{¶ 55} 14. Earlier, on September 1, 2009, the bureau filed in the common pleas court a complaint against Mason, Daily Services, and I-Force. The complaint alleged that I-Force, through Mason, fraudulently transferred its assets to Daily Services to avoid the payment of its liabilities to the bureau. The complaint sought an injunction against Mason and the appointment of a receiver. The bureau alleged that, as of the date I-Force closed, i.e., March 23, 2009, I-Force had unpaid obligations for workers' compensation premiums in the amount of $3,926,605.26. The action was assigned case No. 09-CVH-9-13229.

{¶ 56} 15. On March 21, 2011, the bureau voluntarily dismissed its action in case No. 09-CVH-9-13229.

{¶ 57} 16. Earlier, following an October 15, 2009 hearing, the bureau's adjudicating committee issued an order stating:

> **Background Facts and Issues Presented:** During an Audit, the BWC transferred experience, rights and obligations from predecessor I-FORCE LLC, Policy #1484986 to successor DAILY SERVICES LLC, Policy #1495057 pursuant to Ohio Administrative Code (O.A.C.) 4123-17-02(B) and (C).
>
> * * *
>
> The Employer protested the transfer/combination and requested a hearing before the Adjudicating Committee.
>
> * * *
>
> **Employer's Position:**
> The experience combination was proper. The bureau properly applied the rules. The two companies started as separate businesses. They had separate contracts and customers. However, I-Force was closed and certain employees and contracts were transferred to Daily Services, LLC.
>
> **Bureau's Position:**
> The BWC representative stated the employer's representatives stated that employer ran a temporary agency. The owner of I-Force is also the owner of Daily Services. The businesses are the same. The clients are the same. The location of the business is the same. The employees of the companies are the same. The employer never notified the Bureau of the transfer of the business when it applied for the new policy.
>
> **Findings of Fact and Conclusion of Law:**
> Based on the testimony at the hearing and the materials submitted with the protest, the Adjudicating Committee affirms the experience combination. The employer representatives indicated at hearing they were in agreement with the BWC position.
>
> * * *
>
> **An appeal of this order may be filed within thirty days of its receipt by the employer.**

{¶ 58} 17. The October 15, 2009 order of the adjudicating committee was not administratively appealed to the administrator's designee as provided by R.C. 4123.291.

{¶ 59} 18. On November 6, 2009, the bureau filed with the clerk of the common pleas court a certificate of judgment against Daily Services in the amount of $54,959,570.71.

{¶ 60} 19. On August 18, 2010, pursuant to Civ.R. 60(B), Daily Services moved the common pleas court to vacate the bureau's November 6, 2009 certificate of judgment. (The case was assigned No. 09JG-46435.)

{¶ 61} 20. On February 8, 2011, the common pleas court, through Judge John Bessey granted Daily Services' August 18, 2010 motion to vacate the bureau's November 6, 2009 certificate of judgment.  In his decision and entry granting relief to Daily Services, Judge Bessey explained:

> [T]he Court finds that before Plaintiff BWC filed its suit in Case No. 09CVH09-13229, seeking to hold Defendant liable for I-Force's debt as a successor-in-interest, Defendant did protest the BWC's attempt to combine the experience of Defendant with I-Force for the purpose of setting future premiums. However, the Court finds that the BWC mistakenly claims that the hearing before the Adjudicating Committee of the BWC resulted in a finding that Defendant was a successor to I-Force. The October 15, 2009 Order of the Adjudicating Committee of the BWC specifically states:
>
>> Based on the testimony at the hearing and the materials submitted with the protest, the Adjudicating Committee affirms the *experience combination*. The employer representatives indicated at the hearing they were in agreement with the BWC position. [Emphasis added.]
>
> The Court finds that this Order makes no reference to the issue of whether Defendant was a successor to I-Force and thus liable for I-Force's deficiencies.

(Emphasis sic.)

{¶ 62} 21. The judgment of the common pleas court (Judge Bessey) that vacated the November 6, 2009 certificate of judgment was not appealed to this court.

{¶ 63} 22. Earlier, during September 2010, the bureau issued an "assessment" in the amount of $3,170,366.53.  Daily Services protested the "assessment."

{¶ 64} 23. Following a January 13, 2011 hearing, the adjudicating committee issued an order upholding the assessment in the amount of $3,170,366.53. As indicated in the order, during the hearing Daily Services' counsel objected to the jurisdiction of the committee to hear the protest. Daily Services argued that the committee lacked jurisdiction over Daily Services' protest because of the civil action then pending in the common pleas court in case No. 09-CVH-9-13229. (Judge Bessey's judgment entry was filed February 8, 2011 and the committee's order was mailed February 9, 2011.)

{¶ 65} The adjudicating committee's decision to uphold the assessment was premised upon its interpretation of the scope of the October 15, 2009 committee order that was not administratively appealed:

> The Bureau's representative stated that the subject debt was transferred to Daily Services as the result of an experience combine with the experience of I-Force having been transferred to Daily Services. The Committee notes that the specific issue of the experience combination was specifically before the Adjudicating Committee on October 15, 2009. In the resulting order, the Adjudicating Committee, in affirming the experience combination, specifically stated that "[t]he employer representatives indicated at hearing they were in agreement with the BWC position." The order from the October 15, 2009 hearing, was not appealed.

{¶ 66} 24. Daily Services administratively appealed the January 13, 2011 order of the adjudicating committee to the administrator's designee.

{¶ 67} 25. On February 18, 2011, while the January 13, 2011 order of the adjudicating committee was pending before the administrator's designee, the bureau filed with the clerk of the common pleas court a certificate of judgment against Daily Services in the amount of $3,170,366.53.

{¶ 68} 26. Pursuant to Civ.R. 60(B), on March 9, 2011, Daily Services moved the common pleas court to vacate the bureau's February 18, 2011 certificate of judgment

{¶ 69} 27. Following an April 19, 2011 hearing, the administrator's designee mailed an order on June 14, 2011 that affirms the January 13, 2011 order of the adjudicating committee.

{¶ 70} 28. On November 21, 2011, the common pleas court, through Judge Guy L. Reece, II, granted Daily Services' March 9, 2011 motion to vacate the bureau's

February 18, 2011 certificate of judgment.  In his lengthy decision and entry (18 pages) Judge Reece explains:

> The issue of whether a successor-in-interest finding was made on October 15, 2009, was argued before Judge Bessey in Case No. 09JG-46435 and Judge Bessey found that such a determination had not been made in the October 15, 2009 order. Daily Services and the BWC were both parties to the action pending before Judge Bessey and it is undisputed that this is a court of competent jurisdiction. Accordingly, the Court agrees with Daily Services about the preclusive effect of Judge Bessey's February 8, 2011 decision - as to whether a successor-in-interest determination was made in the October 15, 2009 order - on the February 9, 2011 decision by the Adjudicative Committee and on the June 14, 2011 decision by the Designee.

{¶ 71} 29.  The bureau appealed the November 21, 2011 judgment of Judge Reece to this court.  On September 18, 2012, this court issued its decision affirming Judge Reece's decision granting relief to Daily Services under Civ.R. 60(B).  This court held that R.C. 4123.37 did not permit the bureau to obtain a judgment lien against Daily Services while its administrative appeal to the administrator's designee was pending.  *State ex rel. Ohio Bur. of Workers' Comp. v. Daily Serv., LLC,* 10th Dist. No. 11AP-1122, 2012-Ohio-4242.

{¶ 72} 30. By letter dated February 28, 2013, the bureau noticed Daily Services that its "experience combine protest" has been rescheduled for a hearing before the adjudicating committee on March 20, 2013.  The letter informed that "[o]nly issues contained in Enclosed Statement of Protest will be heard at the hearing."  (Emphasis sic.) The enclosure stated:

> In May 2009, the Bureau determined that Daily Services, LLC was the successor to I-Force, LLC and responsible for I-Force's unpaid premiums. In June 2009, the Bureau issued invoices to Daily Services, billing Daily Services for I-Force's unpaid premiums. The invoices noted that Daily Services was the successor to I-Force, LLC and responsible for I-Force's unpaid premiums, stating that "As a successor to I-Force, LLC, you are responsible for any total balance shown on the Invoice/Statement for this policy."
>
> In a letter dated June 15, 2009, the employer protested the Bureau's determination that the [sic] Daily Services was a successor in interest to I-Force within the meaning of O.A.C.

4123-17-02(C). Specifically, the employer argued that the "amount invoiced is a liability solely of I-Force, not Daily [Services]...."

On October 15, 2009, the bureau's Adjudicating Committee held a hearing on the employer's protest. The statement of facts for that hearing noted that the Bureau would determine first, whether I-Force's experience should be transferred to Daily Services under O.A.C. 4123-17-02(B), and second, whether Daily Services was a successor to I-Force and thus was liable for I-Force's obligations under O.A.C. 4123-17-02(C).

In a decision dated October 15, 2009, the Adjudicating Committee held that I-Force's experience should be transferred to Daily Services under O.A.C. 4123-17-02(B). As determined by two judges of the Franklin County Court of Common Pleas, however, the Adjudicating Committee never determined the second issue, *i.e.,* whether Daily Services was a successor to I-Force and thus was liable for I-Force's obligations under O.A.C. 4123-17-02(C).

Therefore, a hearing is scheduled with the Adjudicating Committee to provide the employer the opportunity to fully administratively adjudicate the Bureau's determination on successor liability under O.A.C. 4123-17-02(C).

(Emphasis sic.)

{¶ 73} 31. Earlier, on January 16, 2013, the bureau issued notice that Daily Services' June 2009 protest was scheduled for hearing before the adjudicating committee on March 5, 2013. The notice of hearing prompted relator to file an original action in prohibition in the Supreme Court of Ohio on January 29, 2013. In its complaint, Daily Services requested a writ prohibiting respondent "from exercising any further jurisdiction on the 2009 Protest."

{¶ 74} 32. On March 15, 2013, the Supreme Court of Ohio granted the respondents' motion to dismiss the prohibition action.

{¶ 75} 33. Following a March 20, 2013 hearing, the bureau's three-member adjudicating committee issued a lengthy order (23 pages) in which it concluded:

This Adjudicating Committee DENIES the Employer's protest of the transfer/Combination based on the Joint Exhibits, evidence outlined in the Statement of Facts, and the referenced testimony and evidence. The Committee finds

> Daily Services is a successor-in-interest to I-Force for workers' compensation purposes under Ohio Adm.Code 4123-17-02(C) and thus, liable for I-Force's obligations. Ryan Mason guided I-Force [sic] through a "seamless" takeover of I-Force's occupation or industry in such a way that Daily Services wholly succeeded I-Force for workers' compensation purposes. The maneuvering that moved business operations from one legal entity to another discussed above amounts to a voluntary transfer of business operations.

{¶ 76} 34. The order of the adjudicating committee was mailed in July 2013.

{¶ 77} 35. During the period between the hearing date of the adjudicating committee and the mailing of its order, the common pleas court, through Judge Kim Brown, issued a decision in a civil action that had been filed by Daily Services against the bureau in December 2011. That civil action was assigned case No. 11CV-15913. In that action, the bureau had filed a counterclaim against Daily Services. On May 15, 2013, Judge Brown issued a decision and entry that, among other things, dismissed the bureau's counterclaim.

{¶ 78} 36. Relator administratively appealed the March 20, 2013 order of the adjudicating committee to the administrator's designee pursuant to R.C. 4123.291.

{¶ 79} Following a November 14, 2013 hearing, the administrators' designee issued an order affirming the March 20, 2013 order of the adjudicating committee. The order of the administrator's designee explains:

> Pursuant to Ohio Revised Code Section 4123.291, this matter came on for hearing before the Administrator's Designee on the employer's appeal of the Adjudicating Committee order dated March 20, 2013. At issue before the Administrator's Designee was the Bureau's determination that Daily Services, LLC ("Daily Services") was the successor to I-Force, LLC ("I-Force") and responsible for I-Force's unpaid premiums.
>
> In a decision dated October 15, 2009, the Adjudicating Committee held that I-Force's experience should be transferred to Daily Services under OAC 4123-17-02(B). As determined by two judges of the Franklin County Court of Common Pleas, however, the Adjudicating Committee never determined the second issue, *i.e.,* whether Daily Services was a successor to I-Force and thus was liable for I-Force's obligations under OAC 4123-17-02(C).

Therefore, the Administrator's Designee hearing was scheduled to provide the employer the opportunity to fully administratively adjudicate the Bureau's determination on successor liability under OAC 4123-17-02(C).

* * *

The Administrator's Designee adopts the Statement of Facts * * * contained in the order of the Adjudicating Committee dated March 20, 2013.

As a preliminary matter, Daily Services argued before the Administrator's Designee * * * and in its Hearing Brief submitted November 14, 2013, that the Adjudicating Committee lacks jurisdiction to consider the issue of Daily Services' liabilities as a successor to I-Force under OAC 4123-17-02(C). The Administrator's Designee rejects Daily Services' argument and finds the Adjudicating Committee retained jurisdiction to consider the issue of Daily Services' successor liability on March 20, 2013, as the issue, having been raised by Daily Services' June 15, 2009, protest, remained unresolved; the Adjudicating Committee had never issued a final administrative order addressing the matter. The Administrator's Designee is persuaded by, and hereby adopts, the analysis contained in pages 15-16 of the March 20, 2013, Adjudicating Committee order, which states in part:

Daily Services asserted in its hearing brief that this Adjudicating Committee does not have jurisdiction to hold another hearing. This assertion is moot in light of the Supreme Court's denial of Daily Services' prohibition action and the dismissal of the bureau's counterclaim in case no. 11-CV-015913. The question of successor liability remains unresolved, therefore, the Adjudicating Committee retains jurisdiction over Daily Services' original protest of the Bureau's successor determination that was submitted by Daily Services on June 15, 2009. Two separate court decisions found the order from the Adjudicating Committee held October 15, 2009, which was in response to the June 15, 2009 protest, failed to determine whether Daily Services is the successor to I-Force. On May 15, 2013, in case no. 11-CV-015913, the court found "the Adjudicating Committee is the proper forum for adjudicating the issue of Plaintiff's successor liability." * * *

Daily Services' protest has not been fully adjudicated. Courts that have interpreted the order from the Adjudicating

Committee held October 15, 2009 have found the Adjudicating Committee did not address Daily Services' protest challenging the Bureau's determination that Daily Services is a successor to I-Force. As a matter of law, the matter remains pending at the Adjudicating Committee processing level. See *State Bur. of Workers' Comp. v. C.W. Fletcher,* 4th Dist. No. 96CA32, 1997 Ohio App. LEXIS 923, *12 (Mar. 13, 1997) (holding that the BWC's failure to administratively decide a petition challenging an assessment "left the matter pending"); *see also State Bur. of Workers' Comp. v. Daily Services, LLC,* 10th Dist. No. 11AP-1122, 2012-Ohio-4242, 1 ¶ 22-23 (recognizing and following the Fourth District's *Fletcher* opinion).

* * *

As the court in *Fletcher* noted, "Adjudicative functions by administrative agencies allow matters to be resolved by experts in that area and often provide for a less formal hearing atmosphere. However, a lesser level of formality does not relieve the administrative agency from entering a final order on matters presented to it. Orders are necessary to bring finality and resolution to matters." *Fletcher,* 1997 Ohio App. LEXIS 923, at *9. Prior to March 20, 2013, the Adjudicating Committee had not issued a final administrative order addressing the issue of Daily Services' liability under OAC 4123-17-02(C) as successor-in-interest to I-Force; therefore, the Committee had retained, and properly exercised, jurisdiction to do so.

Determination of Successorship

At issue in this case is whether Daily Services is the successor employer of I-Force under the Ohio workers' compensation laws, specifically for purposes of determining Daily Services' liability for the unpaid premium obligations of I-Force. The relevant issues in determining whether there is a successorship are whether there was a transfer of the operations of the business, in whole or in part, and whether the transfer was voluntary.

R.C. 4123.32 provides the basis for the Bureau to make successorship determinations. R.C. 4123.32(C) states:

The administrator of workers' compensation, with the advice and consent of the bureau of workers' compensation board of directors, shall adopt rules with respect to the collection,

maintenance, and disbursements of the state insurance fund including all of the following:

* * *

(C) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter; ...

(emphasis added.)

On the authority of R.C. 4123.32(C), BWC adopted Rule 4123-17-02 to further the purposes embodied in the statute. The rule has been in effect in some form since at least 1962. During the time period relevant to this case [March 2009], Paragraph (B) of the rule provided (and still provides) various scenarios to determine whether the Bureau will transfer the experience of the predecessor, in whole or in part, to the successor to establish an experience modifier rate for the successor, based upon the Bureau's determination of whether, and the extent to which, the employer succeeded another legal entity in the operation of a business. The Adjudicating Committee order dated October 15, 2009, affirmed that Daily Services wholly succeeded I-Force for purposes of experience combination under OAC 4123-17-02(B), and that order was not appealed. * * *

Paragraph (C) of the rule as in effect during the time period relevant to this case (the version initially effective July 27, 2006), provided for the transfer of the liabilities of the predecessor to the successor employer where the Bureau determines that "one employer wholly succeeds another in the operation of a business:"

(C) Succeeding employers -- risk coverage transfer.

(1) Whenever one employer succeeds another employer in the operation of a business in whole or in part, the successor shall notify the bureau of the succession. Where one

**employer wholly succeeds another in the operation of a business, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law**. The successor shall be credited with any credits of the predecessor, including the advance premium security deposit of the predecessor. **This paragraph shall apply where an employer wholly succeeds another employer in the operation of a business on or after September 1, 2006**.

(**Emphasis added**.)

In *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.* (1991), 62 Ohio St.3d 81, the Ohio Supreme Court held that "a successor in interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part." Id. at 83. The Court noted that "the General Assembly would have expressly set forth a more specialized meaning if that was its intent." Id. at 83.

In *State ex rel. Valley Roofing, L.L.C. v. Ohio Bur. of Workers' Comp.,* 122 Ohio St.3d 275, 2009-Ohio-2684 the Court emphasized the importance of a voluntary transfer of the business in the determination of successorship. Citing *State ex rel. Crosset Co., Inc. v. Conrad* (2000), 87 Ohio St.3d 467, the Court stated "the specific language of R.C. 4123.32(D) [now R.C. 4123.32(C)] * * *, i.e., employer transfers his business in whole or in part or otherwise reorganizes the business, is plain and unambiguous. The language of the statute clearly refers to a voluntary act of the employer and not the involuntary transfer of the employer's business through an intermediary bank." (**emphasis added**.)

Daily Services argued before the Administrator's Designee and in its Hearing Brief submitted November 14, 2013 that the Ohio Supreme Court decision in *State ex rel. K&D Group, Inc. v. Buehrer,* 135 Ohio St.3d 257, 2013-Ohio-734, precludes a finding that Daily Services is a successor to I-Force because, it alleges, there was no "voluntary transfer" of business operations from I-Force to Daily Services. The *K&D Group, Inc.,* case dealt with the management of an apartment complex upon transfer of ownership of the apartment complex. The Court found in that case that the new management company was not a successor to the old management company; prior to doing so, the Court stated the following standards to determine successorship:

. . . First, *K&D Group* argues that it was not a party to the sale of the apartments and it did not acquire any assets as a

result of the transaction. But neither R.C. 4123.32(C) nor Ohio Adm.Code 4123-17-02(B)(3) requires the transfer of assets. <u>The focus of the statute and the rule is the transfer of business operations or labor, not the legal concept of corporate succession</u>. R.C. 4123.32(C) ("where one employer *takes over the occupation or industry* of another" [emphasis added]); Ohio Adm.Code 4123-17-02(B)(3) ("Where a legal entity succeeds in the *operation of a portion of a business * * *"* [emphasis added]). <u>A business operation may be transferred through methods other than a purchase</u> ...

*K&D Group, Inc.,* at 14 (<u>emphasis added</u>)

The Administrator's Designee finds that the Court held K&D Group, Inc. was not a successor because of the unique facts of that case, facts that are not present in this adjudication.

In that case, K&D Enterprises, Inc. contracted with Fame-Midamco Company, L.L.C. (by and through Fame-Midamco's management company, Mid-America) to purchase an apartment complex, and assigned its rights under the purchase agreement to newly created company Euclid-Richmond Gardens, Ltd. The new company hired K&D Group, Inc. to manage the apartments. K&D Group, Inc. hired some former employees of Mid-America and assumed the day-to-day operations of the complex. Under these facts, the Court found there was no voluntary transfer of business operations from Mid-America to K&D Group, Inc.; rather, the Court held, "K&D Group merely contracted with the new owner to assume management of the existing apartment complex." *K&D Group, Inc.,* at ¶ 16. In other words, the Court held that the new owners of the complex had simply hired a new management company.

The present case is distinguishable. Both I-Force and Daily Services are owned by the same individual, Ryan Mason * * *, and the testimony and other evidence submitted to the Adjudicating Committee support the Committee's conclusion that, at Ryan Mason's direction * * *, employees transferred the business operation of long-term temporary staffing from I-Force to Daily Services, which previously had offered only day laborer services * * *. Among the evidence to support such conclusion, as set forth in the Adjudicating Committee's Statement of Facts and the evidence presented:

- When I-Force shut down, Daily Services "had something like six or seven" permanent employees and hired a number of I-Force permanent employees.

* * * Daily Services made job offers "to virtually everyone" and on "the next pay date, or the first that came after that, 54 of those folks were then employed by Daily Services." Id. They were terminated on Friday and most accepted positions at Daily Services. * * * I-Force did not have the right to sell or assign its permanent staff to anyone..." * * * Some of the permanent staff are long-time employees doing the same thing some were "previously employed by Mancan when I-Force was still part of Mancan..." * * *

- Daily Services asserted that "I-Force's leases were terminated or breached. Daily Services went in and signed new leases for the properties, to the extent they were able to. Some of the properties were actually owned by Ryan Mason personally. They have previously been leased by I-Force and were subsequently leased by Daily Services." * * * "[T]he properties weren't transferred, I-Force shut down, had 31 locations and Daily Services was able to lease 11 of those locations thereafter." * * * Daily Services took over the computer leases of I-Force. * * * Daily Services made all of their quarterly tax payments to the Federal Government. Id. * * *

- Mr. Mason had his employees contact his I-Force clients who were to contact and re-sign them to Daily Services. * * *

- The contracts mirrored those of I-Force with the only difference being the name of the company and contracting services. * * *

- The staff employees were moved from one company to the other over a weekend and were required to sign no-compete clauses and some employees were asked to backdate those employee forms to March of 2009. * * *

- Ms. Archer also testified about a ranking system that was used to determine which clients Daily Services would want to keep from I-Force where the client employers were ranked between 1 and 3. * * *

- During the month of April and early March of 2009, BWC's Workers' Compensation Insurance System (WCIS) reflects an extreme number of notes for new

manual codes to be added to the Daily Services' account. * * * This indicates "they were preparing to move the clients from I-Force to Daily so the manual codes would be there so when they had to report the payroll under that six months [reporting period], there would be three months under one company and three months under the other." * * *

- "Based on the interviews ... the regional supervisors were sent out with new contracts and told them to let the customers know that it was just a name change, it would be no interruption of their services, that they were just wanting them to sign the new paperwork with the new Talocity name on it." * * *

- Daily Services asserted before the Adjudicating Committee that "roughly one-third of the business that formerly belonged to - the payroll that it formerly belonged to I-Force wound up being utilized, being billed out by Daily Services in the following months." * * * However, as counsel for the Bureau pointed out during the hearing, on day one of business, Daily Services had approximately half of I-Force's business. The 30 percent of the customers comprised 50 percent of I-Force sales for that snapshot period of time. * * *

- On March 23, 2009, Ryan Mason ceased operating I-Force's line of business through I-Force, LLC. * * *

- Daily Services purchased the right to use the name "I-Force. * * * Since then, Daily Services has operated under the trade name "I-Force" with date of first use being listed as 5/01/2010. * * *

- Daily Services dba I-Force held itself out as a continuation of I-Force on its website, which at the time of the Adjudicating Committee hearing on March 20, 2013 displayed a company history nearly identical to that on I-Force's website in February 2009, prior to I-Force's ceasing operations. * * *

- Columbus CEO magazine's ranking of temporary staffing agencies based on the number of Central Ohio hours billed during 2008 (prior to I-Force's ceasing operations), 2011, and 2012 all list "I-Force" as the second-largest temporary staffing agency in Central

Ohio, with the same address, website, and telephone number for "I-Force" on all three lists. * * *

Thus, the evidence supports the Adjudicating Committee's conclusion that Ryan Mason, as owner of both companies, orchestrated the assumption of I-Force's long-term temporary staffing business operations by Daily Services, targeting the most desirable client employers based on a ranking system, to avoid the negative experience rating and unpaid premium obligations of I-Force.

As noted above, the Court in *K&D Group, Inc.,* clearly stated that "[a] business operation may be transferred through methods other than a purchase," and it is reasonable to find these circumstances to constitute such an occasion. For Daily Services to assert there was no voluntary transfer of business operations in this case is akin to arguing that Mr. Mason's right hand did not know what his left hand was doing.

In addition to *K&D Group, Inc.,* Daily Services cites to two Tenth District Court of Appeals cases as support that a finding of successorship against Daily Services is not appropriate; however, a reading of the cases does not support Daily Services' contention.

In *State ex rel. Cleveland Professional Football, L.L.C. v. Buehrer,* 2012-Ohio-6020, following the bankruptcy of the old Arena Football League ("Old League"), the old Cleveland AFL team ("Old Gladiators") ceased operations, and a new company ("New Gladiators") purchased the rights to the Cleveland Gladiators logo from an investor group ("New League") that had purchased the assets of the Old League in the bankruptcy proceeding. Unlike the Old League, under the business model of the New League the players and coaches would be employed by the league, not by the individual teams, which would be involved solely with the sale of tickets, sponsorship, and merchandise for sports entertainment. *Cleveland Professional Football* at ¶ 51-52.

The BWC Adjudicating Committee and Administrator's Designee found that New Gladiators wholly succeeded Old Gladiators. The 10th District Court of Appeals, however, found otherwise, holding that a partial rather than a complete transfer of experience was appropriate, since the players and coaches part of Old Gladiators business operations did <u>not</u> carry over to New Gladiators:

{¶ 6} We are unable to discern whether the BWC objects to the remaining portion of the magistrate's decision that directs the BWC to expressly address how it will apply Old Gladiators' experience rating to New Gladiators, <u>given that New Gladiators is the transferee of only a portion of Old Gladiators' business. We note that if only a portion of Old Gladiators' business was transferred to New Gladiators, Old Gladiators' experience rating is transferred in proportion to the business transferred</u> pursuant to Ohio Adm.Code 4123-17-02(B)(3). We see no defect in this part of the magistrate's analysis.

{¶ 7} <u>As noted by the magistrate, New Gladiators does not employ players or coaches. Therefore, it is not the transferee of this portion of Old Gladiators' business.</u> Therefore, we agree with the magistrate that the BWC abused its discretion by transferring all of Old Gladiators' experience rating to New Gladiators. To the extent that the BWC objects to this portion of the magistrate's conclusion of law, we overrule the objection.

*Cleveland Professional Football* at ¶ 6, 7. (<u>emphasis added</u>.)

In *State ex rel. RFFG, L.L.C. v. Ohio Bur. of Workers' Comp.,* 2013-Ohio-241, temporary staffing agency Ameritemps, Inc. ("Ameritemps") was purchased by WTS Acquisition Company and subsequently transferred to RFFG. RFFG notified BWC of the purchase, and BWC notified RFFG that BWC would consider it the successor to Ameritemps for workers' compensation purposes. RFFG did not want to assume all the risks associated with Ameritemps and argued that it had changed significant portions of how and where Ameritemps had formerly done business. RFFG at ¶ 4-6. However, RFFG ultimately failed to provide sufficient documentation to substantiate those assertions, and as a result, the Tenth District Court of Appeals upheld BWC's determination of successorship.

In the course of its analysis, the court indicated that a reduction in the number of offices or employees, or the number of client employers was itself not determinative; rather, the key issue was whether the risks were the same for RFFG as they were for Ameritemps -- in other words, were the business operations of RFFG the same as Ameritemps, even if fewer offices/employees were performing them for fewer client employers:

{¶ 9} As to the first objection, the information provided to BWC did not really address the key issue of the risks involved in the ongoing business. <u>The fact that only 4 of 12 offices remained open did not inform the BWC of the alleged changes in the business</u>... <u>A reduction in the number of business clients, without information of which business clients were involved and what services were provided to the remaining clients does not tell the BWC whether the risk of injury has changed</u> ...

{¶ 10} The magistrate acknowledges that some information provided by RFFG is present in the record before us. Key information as to the risks for workers in the ongoing business was not provided. <u>RFFG/Ameritemps may employ fewer people, but the risks associated with the work done may well be unchanged. What RFFG/Ameritemps pays BWC will be reduced if fewer people are employed but the rate per employee does not need to change just because fewer or different people may be employed doing the same tasks</u>.

* * *

{¶ 13} The adjudicating committee had only allegations as to the change of the tasks performed on behalf of the ongoing clientele, no real proof of a significant change in the risk to employees. The information provided via the U–118 and purchase agreement clearly showed WTS and RFFG were a successor to Ameritemps. <u>RFFG did not demonstrate that the risks changed, only that fewer and/or different people were performing the functions previously performed by Ameritemps</u>.

*RFFG* at ¶ 9, 10, 13 (<u>emphasis added</u>.)

Daily Services cites to both the *Cleveland Professional Football* and *RFFG* cases for the proposition that, since Daily Services "did not pick up <u>all</u> of I-Force's business operations, customers, or employees" * * * a finding that Daily Services wholly succeeded I-Force is improper. Daily Services' argument hinges largely on its pointing out that it did not assume 100% of I-Force's permanent staff, temporary staff, or client employers on March 23, 2009.
However, as the *RFFG* case suggests, the numbers alone are not dispositive. Like RFFG, Daily Services has not demonstrated, and the evidence submitted does not support, that the nature of Daily Services' business operations (or risks) as of March 23, 2009, forward is significantly different from that of I-Force. Instead, the evidence shows that Daily

Services requested "an extreme number of new manual codes" be added to its BWC account, so as to enable it to offer the long-term temporary staffing services I-Force had offered, which it could then offer not only to I-Force clients moving to Daily Services, but to any new clients as well. * * *

In *Cleveland Professional Football,* New Gladiators could demonstrate its risk was significantly different from that of Old Gladiators, and the Tenth District accordingly found New Gladiators did not wholly succeed Old Gladiators' business operations: Daily Services, like RFFG, has not demonstrated so. Therefore, a finding that Daily Services wholly succeeded I-Force -- both for purposes of experience combination under OAC 4123-17-02(B), as the Adjudicating Committee had previously determined * * *, and for the transfer of liabilities under OAC 4123-17-02(C) -- is appropriate.

* * *

[T]he Administrator's Designee specifically finds, for the reasons set forth in this order and in the Adjudicating Committee order dated March 20, 2013, that Daily Services wholly succeeded I-Force for purposes of the transfer of I-Force's "rights and obligations under the workers' compensation law," including I-Force's unpaid premium liabilities, to Daily Services pursuant to OAC 4123-17-02(C)(1) as in effect at the time of the voluntary transfer of I-Force's business operations to Daily Services on March 23, 2009.

Based on the testimony and other evidence presented at the hearing, the Administrator's Designee, with the Affirmation of Legal Standard Applied as set forth above, AFFIRMS the decision, findings, and rationale set forth in the order of the Adjudicating Committee dated March 20, 2013.

{¶ 80} 37. On May 19, 2014, relator, Daily Services, LLC, filed this mandamus action.

Conclusions of Law:

{¶ 81} The issue is whether the bureau had R.C. 4123.52 continuing jurisdiction to adjudicate that portion of relator's June 2009 protest regarding the bureau's transfer of I-Force's premium obligations under Ohio Adm.Code 4123-17-02(C) long after the bureau,

through its adjudicating committee of October 15, 2009 had issued a final order adjudicating the protest.

{¶ 82} It is the magistrate's decision that the bureau lacked R.C. 4123.52 continuing jurisdiction to convene an adjudicating committee to revisit the October 15, 2009 final order of the adjudicating committee.  Accordingly, as more fully explained below, it is the magistrate's decision that this court issue a writ of mandamus ordering the bureau to vacate the March 20, 2013 order of its adjudicating committee and the November 14, 2013 order of its administrator's designee.

{¶ 83} R.C. 4123.52 states:

> The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified.

{¶ 84} Continuing jurisdiction is not unlimited.  Its prerequisites are:  (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; (5) error by an inferior tribunal.  *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990; *State ex rel. Royal v. Indus. Comm.*, 95 Ohio St.3d 97 (2002); *State ex rel. Foster v. Indus. Comm.*, 85 Ohio St.3d 320 (1999); *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454 (1998).

{¶ 85} Any commission order seeking to exercise continuing jurisdiction must clearly state which of the five bases it is relying on.  *Nicholls* at 459.  The reason for the exercise of continuing jurisdiction must be articulated contemporaneously with the exercise of continuing jurisdiction, not belatedly.  *Royal* at 100.  An incomplete continuing jurisdiction order cannot be rehabilitated by a subsequent order.  *Id.*

{¶ 86} In *Gobich,* the court describes *Nicholls, Foster,* and *Royal* as "uncompromising in their demand that the basis for continuing jurisdiction be clearly articulated."  *Gobich* at ¶ 18.  "This rule destroys any assertion that an informal or silent invocation of continuing jurisdiction can occur."  *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 119 Ohio St.3d 402, 2008-Ohio-4494, ¶ 15.  As R.C. 4123.52 indicates, like the commission, the administrator of workers' compensation is also statutorily granted continuing jurisdiction.  Presumably, the rules regarding continuing

jurisdiction made applicable to the commission through case law are also applicable to the administrator. *See State ex rel. Ochs v. Indus. Comm.*, 85 Ohio St.3d 674 (1999).

{¶ 87} Here, while the March 20, 2013 order of the adjudicating committee and the November 14, 2013 order of the administrator's designee address a jurisdictional issue, neither order articulates which of the five bases for continuing jurisdiction is relied upon. Rather, the orders find jurisdiction, in large part, based upon two court decisions in which the trial judges determined that the October 15, 2009 adjudicating committee order fails to adjudicate whether relator is a successor-employer for purposes of transferring liability of I-Force's premium obligations to relator pursuant to former Ohio Adm.Code 4123-17-02(C)(1). Neither judge actually determined or ordered that the October 15, 2009 adjudicating committee order must be revisited by the bureau. The two judges simply determined that the October 15, 2009 adjudicating committee order did not determine all that the bureau was purporting. That is, the judges disagreed with the bureau's interpretation of its order.

{¶ 88} The October 15, 2009 order of the adjudicating committee is a final bureau order because there was no administrative appeal to the administrator's designee. However, that the October 15, 2009 order was not administratively appealed did not alone prohibit the bureau from exercising continuing jurisdiction over the October 15, 2009 order. *State ex rel. Scott v. Ohio Bur. of Workers' Comp.*, 73 Ohio St.3d 202 (1995).

{¶ 89} However, the March 20, 2013 attempt by the adjudicating committee to exercise continuing jurisdiction over the October 15, 2009 order of the adjudicating committee occurred more than four years after the October 15, 2009 order. Like the commission, the bureau must exercise its continuing jurisdiction within a reasonable period of time. *State ex rel. Gordon v. Indus. Comm.*, 63 Ohio St.3d 469 (1992). Certainly, as of the date that Judge Bessey issued his judgment on February 8, 2011 in Case No. 09JG-46435, the bureau should have been aware that its interpretation of the October 15, 2009 order of the adjudicating committee was not the correct interpretation. Accordingly, it appears that the bureau delayed an unreasonable period of time to exercise its continuing jurisdiction.

{¶ 90} Both the March 20, 2013 order of the adjudicating committee and the November 14, 2013 order of the administrator's designee rely upon the dismissal of relator's prohibition action in the Supreme Court of Ohio. Yet, the order of the Supreme

Court dismissing the action simply explains that the respondents' motion to dismiss is granted. No court opinion accompanied the court's dismissal entry.

{¶ 91} "In order for a writ of prohibition to issue, the relator must establish that the court, official or tribunal against whom it is sought, must be about to exercise judicial or quasi-judicial power; the exercise of power must amount to an unauthorized usurpation of judicial power; and refusal of the writ would result in an injury for which there is no adequate remedy." *State ex rel. Eaton Corp. v. Lancaster*, 40 Ohio St.3d 404 (1988).

{¶ 92} Prohibition tests and determines " 'solely and only' " the subject matter jurisdiction of an inferior tribunal. *Eaton* at 409, quoting *State ex rel. Staton v. Common Pleas Court,* 5 Ohio St.2d 17, 21 (1965). In a prohibition action, the question is whether jurisdiction is "patently and unambiguously" lacking. *State ex rel. Red Head Brass, Inc. v. Holmes Cty. Court of Common Pleas,* 80 Ohio St.3d 149, 151 (1997).

{¶ 93} Here, it can be observed that no one contends that the bureau lacks jurisdiction generally to determine employer protests relating to premium obligations.

{¶ 94} Contrary to what is stated in the November 14, 2013 order of the administrator's designee, the Supreme Court's dismissal of relator's action did not render "moot" relator's claim that the bureau lacks jurisdiction to revisit the October 15, 2009 order of the adjudicating committee.

{¶ 95} Citing *Ohio Bur. of Workers' Comp. v. C.W. Fletcher, Inc.,* 4th Dist. No. 96CA32 (March 13, 1997), respondent argues that it had jurisdiction to convene the March 20, 2013 adjudicating committee because there was a matter before the October 15, 2009 adjudicating committee that the committee failed to "resolve," and that the adjudicating committee of March 20, 2013 "was simply resolving an issue never previously decided as part of Daily Services' 2009 protest." (Respondent's brief, 56.)

{¶ 96} Relator seems to emphasize the word "resolve" so as to suggest jurisdiction must exist to "resolve" that which has not been resolved. Relator's reliance upon *Fletcher* is misplaced.

{¶ 97} Following an audit, the bureau assessed C.W. Fletcher, Inc. ("Fletcher") for unpaid workers' compensation premiums in the amount of $820,871.58. Fletcher filed a petition (protest) with the bureau's adjudicating committee objecting to the assessment.

However, the adjudicating committee never held a hearing or formally resolved Fletcher's petition.

{¶ 98} Thereafter, the bureau obtained a judgment lien against Fletcher in the amount of $820,871.58 in Pickaway County.

{¶ 99} The secretary of the adjudicating committee mailed Fletcher a letter that the adjudicating committee would not hear Fletcher's petition because the adjudicating committee viewed the petition as a request for a payment plan rather than an objection to the audit.

{¶ 100} Following Fletcher's default on the payment plan and the garnishment of its bank account, Fletcher moved to void the judgment lien pursuant to Civ.R. 60(B)(5).

{¶ 101} In *Fletcher,* the trial court found that the adjudicating committee's letter to Fletcher did not resolve the petition and that the bureau's judgment was voidable because the bureau failed to hold a hearing or dismiss the petition, thus depriving Fletcher of the opportunity to appeal to the common pleas court pursuant to R.C. 4123.37.  The trial court granted Fletcher's Civ.R. 60(B) relief from judgment and the bureau appealed to the Fourth District Court of Appeals.

{¶ 102} The appellate court agreed with the trial court that the letter "leaves one guessing as to whether it is the final decision of the adjudicating committee that may be appealed" to the common pleas court under R.C. 4123.37.  *Fletcher* at 4.

{¶ 103} In *Fletcher,* the appellate court held that the bureau was not authorized to file a certified copy of the assessment with the clerk of courts and obtain a judgment lien because the bureau had failed to "resolve" the petition.  The court states:  "The BWC's failure to resolve the petition has left the matter pending, thus precluding a judgment." *Id.* at 4.

{¶ 104} The appellate court did not foreclose the bureau from ruling on the petition and obtaining a proper judgment by complying with R.C. 4123.37.  The court states:

> Fletcher still owes a significant sum to the BWC and if the BWC complies with R.C. 4123.37 in obtaining a judgment, then it is entitled to utilize the enforcement powers provided by the Revised Code.

*Id.* at 6.

{¶ 105} The complete failure of the adjudicating committee in *Fletcher* to adjudicate or dismiss the petition is equated here by respondent with the bureau's sua

sponte assertion of continuing jurisdiction over the October 15, 2009 adjudicating committee order that, in fact, did adjudicate relator's June 2009 protest although not as to an issue that has been the subject of much litigation.  Thus, the so-called failure of the adjudicating committee in *Fletcher* to "resolve" the petition is not the same as the failure of the October 15, 2009 adjudicating committee order to "resolve" the issue that respondent wants to resolve by the exercise of continuing jurisdiction.

{¶ 106} In *Fletcher,* there is no issue as to the adjudicating committee's continuing jurisdiction because the adjudicating committee had never exercised jurisdiction in the first instance to adjudicate Fletcher's petition.  In fact, the *Fletcher* court does not even mention R.C. 4123.52 continuing jurisdiction presumably because the case does not involve continuing jurisdiction.

{¶ 107} In short, respondent's reliance upon *Fletcher* to support its assertion of continuing jurisdiction over the October 15, 2009 order of the adjudicating committee is misplaced.

{¶ 108} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent to vacate the March 20, 2013 order of its adjudicating committee and the November 14, 2013 order of its administrator's designee.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).