THE STATE EX REL. K&D GROUP, INC., APPELLANT, *v.* BUEHRER, ADMR.,
APPELLEE.

[Cite as *State ex rel. K&D Group, Inc. v. Buehrer*, 135 Ohio St.3d 257,
2013-Ohio-734.]

*Workers' compensation—Successor in interest—Experience rating.*

(No. 2011-1918—Submitted January 8, 2013—Decided March 6, 2013.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-608, 2011-Ohio-5051.

_____

**Per Curiam**.

{¶ 1} Appellant, K&D Group, Inc., filed a complaint in mandamus in the Franklin County Court of Appeals alleging that the Bureau of Workers' Compensation abused its discretion when it transferred part of the experience rating of Mid-America Management Corporation ("Mid-America") to K&D Group, Inc., as successor in interest.

{¶ 2} For the reasons that follow, we hold that K&D Group, Inc., was not a successor in interest for purposes of workers' compensation law. Thus, the bureau abused its discretion when it transferred part of Mid-America's experience rating to K&D Group, Inc. We reverse the judgment of the court of appeals and issue a writ of mandamus.

**Facts**

{¶ 3} In 2004, K&D Enterprises, Inc., contracted with Fame-Midamco Company, L.L.C., through K&D Enterprises's manager, Mid-America, to purchase an apartment complex known as the Euclid-Richmond Gardens. Prior to the closing, K&D Enterprises created a new company, Euclid-Richmond Gardens, Ltd., and assigned its rights under the purchase agreement to that new company.

{¶ 4} Euclid-Richmond Gardens, Ltd., hired appellant, K&D Group, Inc. ("K&D Group"), a property-management company, to manage the apartments,

which were renamed Parkside Garden Apartments. K&D Group hired some former employees of Mid-America and assumed the day-to-day operations of the complex.

{¶ 5} The bureau conducted an audit of K&D Group in 2009 and determined that it was the successor in interest to the business operations of Mid-America. This determination authorized the bureau to base K&D Group's experience rating in part on Mid-America's past experience, which included a large workers' compensation claim.

{¶ 6} K&D Group filed a protest, arguing that it was not a successor in interest to Mid-America, because it had not been involved in the purchase of the apartment complex and it did not acquire anything in the transaction. Following a hearing, the bureau's adjudicating committee denied the protest. The committee concluded that the bureau had correctly transferred the predecessor's experience to K&D Group as the successor in interest: "The day to day operations of the apartment complex remained the same after the purchase. The K&D Group assumed the prior leases, retained some of the former employees and operated under the same manual numbers."[1] K&D Group's administrative appeal was denied.

{¶ 7} K&D Group filed a mandamus action in the court of appeals. A magistrate concluded that the bureau had not abused its discretion. The court of appeals adopted the magistrate's decision and denied the writ.

{¶ 8} This cause is now before this court on an appeal as of right.

**Legal Analysis**

{¶ 9} When determining what an employer's premium should be, the bureau follows the fundamental concept that rates are determined by "projecting the experience of the past into the future." Fulton, *Ohio Workers' Compensation*

---

1. The term "manual number" refers to the bureau's classification of an employer's business according to its degree of hazardousness. Ohio Adm.Code 4123-17-08.

*Law*, Section 14.4, at 567 (3d Ed.2008). The bureau groups employers with similar operations into classifications based on the risk exposures common to those employers. Each classification is assigned a number known as the "manual number." Generally, it is the employer's business that is classified, not the separate occupations within the business. *See* Ohio Adm.Code 4123-17-08. The bureau also relies on experience rating.

> [E]xperience rating [is] a concept used to determine whether a particular employer should be assigned premium rates higher than or less than the "basic rate" that is assigned to employers within the same classification. In experience rating, the employer's past claims history, or experience, is consulted to compute a rate that produces premiums sufficient to pay future claims.

*State ex rel. Crosset Co., Inc. v. Conrad*, 87 Ohio St.3d 467, 473, 721 N.E.2d 986 (2000).

{¶ 10} The bureau transferred part of Mid-America's experience rating to K&D Group pursuant to its authority under R.C. 4123.32(C) and Ohio Adm.Code 4123-17-02. R.C. 4123.32(C) authorizes the bureau to adopt rules concerning premiums in order to safeguard the State Insurance Fund. The bureau administrator may make rules to cover

> the rates to be applied *where one employer takes over the occupation or industry of another * * *,* and the administrator may require that if any *employer transfers a business* in whole or in part * * *, the *successor in interest* shall assume, in proportion to the extent of the transfer, * * * the employer's account.

(Emphases added.)

{¶ 11} The rule to determine rates for succeeding employers is Ohio Adm.Code 4123-17-02(B)(3), which provides:

> Where a legal entity succeeds in the *operation of a portion of a business* of one or more legal entities having an established coverage or having had experience in the most recent experience period, the successor's rate shall be based on the predecessor's experience within the most recent experience period, pertaining to the portion of the business acquired by the successor.

(Emphasis added.)

{¶ 12} Thus, for the bureau to transfer the experience rating from a predecessor employer to a successor employer, there must be a transfer of business either in whole or in part and the successor employer must be the successor in interest. "[A] successor-in-interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part." *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.*, 62 Ohio St.3d 81, 83-84, 578 N.E.2d 458 (1991).

{¶ 13} K&D Group contends that it is not a successor in interest of Mid-America. First, K&D Group argues that it was not a party to the sale of the apartments and it did not acquire any assets as a result of the transaction. But neither R.C. 4123.32(C) nor Ohio Adm.Code 4123-17-02(B)(3) requires the transfer of assets. The focus of the statute and the rule is the transfer of business operations or labor, not the legal concept of corporate succession. R.C. 4123.32(C) ("where one employer *takes over the occupation or industry* of another" [emphasis added]); Ohio Adm.Code 4123-17-02(B)(3) ("Where a legal entity succeeds in the *operation of a portion of a business* * * *" [emphasis

added]). A business operation may be transferred through methods other than a purchase. For instance, an employer was considered a successor in interest for experience-rating purposes when it leased a nursing-home facility and continued the ongoing business of the predecessor employer. *State ex rel. Lynnhaven XIV, L.L.C. v. Conrad*, 10th Dist. No. 02AP-36, 2003-Ohio-825, 2003 WL 462506.

{¶ 14} Next, K&D Group contends that it cannot be a successor in interest to Mid-America, because there was no direct transfer of the business from Mid-America to K&D Group. K&D Group relies on *State ex rel. Valley Roofing, L.L.C. v. Ohio Bur. of Workers' Comp.*, 122 Ohio St.3d 275, 2009-Ohio-2684, 910 N.E.2d 1018, in which this court held that an employer is not a successor in interest if the business assets of the predecessor entity are purchased from a bank, not directly from the predecessor entity. *Id*. at ¶ 5.

{¶ 15} In that case, Valley Roofing Company, L.L.C., had purchased the assets of Tech Valley Contracting, Inc., from PNC Bank after foreclosure and continued the business operation. The bureau transferred Tech Valley's experience rating to Valley Roofing as a successor in interest. But this court held that Valley Roofing was not a successor in interest, because Valley Roofing had acquired the assets from an intermediary bank. *Id*. at ¶ 6. "Successor in interest," as defined in *Lake Erie,* 62 Ohio St.3d 81, 578 N.E.2d 458, "does not apply if the business assets of the predecessor entity have been purchased from a bank and not directly from that employer. * * * 'The language of [R.C. 4123.32(C)] clearly refers to a voluntary act of the employer and not the involuntary transfer of the employer's business through an intermediary bank.' " *Valley Roofing* at ¶ 5, quoting *State ex rel. Crosset Co.,* 87 Ohio St.3d at 471, 721 N.E.2d 986.

{¶ 16} Here, there is no evidence that Mid-America voluntarily transferred the business of managing the apartment complex to K&D Group. The bureau emphasized that K&D Group hired some former employees of Mid-America, assumed management of the leases that the prior apartment-complex

owner had with its tenants, and operates under the same workers' compensation manual numbers as Mid-America. But these facts are not sufficient to show that Mid-America voluntarily transferred its business operation to K&D Group for purposes of workers' compensation. K&D Group merely contracted with the new owner to assume management of the existing apartment complex. Thus, the bureau abused its discretion when it treated K&D Group as a successor in interest.

## Conclusion

{¶ 17} K&D Group has demonstrated that it has a clear legal right to the relief requested because it was not a successor in interest to the business operations of Mid-America for purposes of workers' compensation. The bureau abused its discretion when it transferred part of Mid-America's experience rating to K&D Group based on R.C. 4123.32(C) and Ohio Adm.Code 4123-17-02. Thus, we reverse the judgment of the court of appeals and issue a writ of mandamus ordering the bureau to determine K&D Group's experience rate without taking into consideration Mid-America's experience rate.

Judgment reversed

and writ granted.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Calfee, Halter & Griswold, L.L.P., Thomas I. Michals, and Jeffrey J. Lauderdale, for appellant.

Michael DeWine, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for appellee Bureau of Workers' Compensation.

_____