**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re A.J.*, Slip Opinion No. 2016-Ohio-8196.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8196

IN RE A.J.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re A.J.,* Slip Opinion No. 2016-Ohio-8196.]**

*Juvenile procedure—Ohio Adm.Code 5101:2-42-05—Ohio Adm.Code 5101:2-42-18—Substitute-care placement—Exclusion of a relative as a substitute caregiver.*

(No. 2016-0353—Submitted August 16, 2016—Decided December 20, 2016.)

APPEAL from the Court of Appeals for Crawford County,

No. 3-15-12, 2016-Ohio-248.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we are asked to determine whether a children-services agency followed Ohio Adm.Code 5101:2-42-05 and 5101:2-42-18, which set forth conditions for the placement of a child with a suitable relative in a substitute-care setting. The plain language of the administrative code provisions does not support

the interpretation proposed by appellant, Brittany J. Accordingly, we affirm the judgment of the Third District Court of Appeals.

## RELEVANT BACKGROUND

{¶ 2} Brittany gave birth to A.J. in July 2014 while serving the first month of a nearly five-year prison sentence for robbery in violation of R.C. 2911.02(A)(2) and drug possession in violation of R.C. 2925.11(C)(1). Appellee Crawford County Department of Job and Family Services ("agency") filed a complaint alleging that A.J. was a neglected child pursuant to R.C. 2151.03(A)(2) because of Brittany's incarceration. The agency's complaint requested permanent custody of A.J.

{¶ 3} Following a shelter-care hearing, the juvenile court committed A.J. to the temporary custody of the agency, pending further hearings. The court ordered the agency to "evaluate the homes of available relative placements" with whom the agency could place the child. The court scheduled an adjudication hearing for August 18, 2014.

{¶ 4} Prior to the adjudication hearing, A.J.'s maternal grandmother and maternal great-grandmother moved to intervene and seek temporary custody of A.J. The agency opposed the motion because the grandmother had been involved with the agency several times and Brittany had not requested placement with the grandmother and the great-grandmother had failed a home-study evaluation.

{¶ 5} On August 18, 2014, the court held an adjudication hearing and concluded that A.J. was a neglected child pursuant to R.C. 2151.03(A)(2). Among those present at the hearing were court-appointed counsel for A.J.'s reputed father, Brian, court-appointed counsel for Brittany, and counsel for A.J.'s maternal grandmother and maternal great-grandmother. Neither the mother nor the reputed father were present.

{¶ 6} At the parties' request, the court postponed the disposition portion of the hearing to allow the agency time to investigate possible placement with Brian.

The court continued the previous order granting temporary custody of A.J. to the agency. The court also denied the grandmothers' motion to intervene.

{¶ 7} On October 10, 2014, the court held the disposition hearing. Present at the hearing were representatives of the agency, the assistant prosecuting attorney, court-appointed counsel for Brittany, court-appointed counsel for Brian, counsel for the grandmothers, and a guardian ad litem to represent A.J.'s interests. The agency withdrew its request for permanent custody based on indications from Brittany and Brian that they intended to fully cooperate with the agency's efforts to pursue reunification of A.J. with Brian. But the parties agreed that A.J. be formally committed to the agency's temporary custody. The court ordered reasonable visitation arrangements be permitted between A.J. and Brian and adopted the agency's case plan with a stated goal of reunifying A.J. with Brian.

{¶ 8} On January 22, 2015, the agency filed its semiannual administrative review ("SAR"). The SAR stated that the agency's goal was reunification of A.J. with Brian but that insufficient progress had been made toward that goal. Specifically, the report noted that Brian's housing had not been verified, his income was unknown, and he had failed to visit A.J. The SAR also stated that the agency had checked relatives whose names were provided by Brittany, but none were considered to be an appropriate placement. According to the SAR, A.J.'s foster placement was a safe and stable environment that met all of the child's needs. The court approved and adopted the findings in the SAR on January 28, 2015.

{¶ 9} The next day, the agency moved for permanent custody. The motion stated that the father had failed to cooperate with completing the case plan objectives and that it had evaluated "all other possible placements" but had determined them to be unavailable or unsuitable. The court scheduled a hearing for April 2015 and issued Brittany and Brian summonses and notices of termination of parental rights.

{¶ 10} Before the hearing on the motion, the judge received ex parte correspondence from Brittany asking why placement of A.J. with a maternal aunt, Jody J., had been denied. Brittany or her mother filed a pro se response to the motion for permanent custody that stated that Jody had been told she was approved for placement of A.J. and that accused the agency and court of "secret dealings."

{¶ 11} Brittany also contacted the court asking that counsel be appointed. The court then appointed substitute counsel on March 26, 2015. Brittany later requested new substitute counsel on the grounds that the second appointed counsel was biased against her and was not willing to advocate for her.

{¶ 12} After a continuance requested by the agency, the court held the permanent-custody hearing on May 26, 2015. In attendance were a representative of the agency, the assistant county prosecutor, court-appointed counsel for Brittany, court-appointed counsel for Brian, and the guardian ad litem, who had filed a report stating that granting permanent custody in the agency was in A.J.'s best interests. Brian was not present and his counsel was not able to explain the reason for the absence. Brittany was not present because she was incarcerated.

{¶ 13} As a preliminary matter, the court inquired about Brittany's request for substitute counsel. After discussion with the parties present, the judge declined to appoint new substitute counsel.

{¶ 14} Susan Bauer, the agency's foster-care and adoption coordinator, testified that Jody had been charged with child endangering in 2002 and that that conduct excluded her as a foster placement. Bauer also testified that the second reason the agency denied placement of A.J. with Jody was because, at the time of Jody's home study, she did not have any income.

{¶ 15} At the conclusion of the hearing, the trial court granted permanent custody to the agency. In a written opinion issued on June 23, 2015, the court set forth its findings of fact and conclusions of law and ordered A.J. committed to the

4

permanent custody of the agency for appropriate adoptive placement.  The court terminated the parental rights of Brittany and Brian.

{¶ 16} On appeal, Brittany argued that the agency did not make a good-faith effort to reunify the parent and the child, because A.J. could have been placed with Brian or Jody, and that the trial court's decision was not supported by clear and convincing evidence.  The Third District Court of Appeals affirmed.  The appellate court concluded that the testimony presented at the permanent-custody hearing established an appropriate basis for rejecting Jody as a relative caregiver.

{¶ 17} We accepted Brittany's discretionary appeal to review the following proposition:

> Absent proof of conviction of one of the charges specified in O.A.C. 5101:2-42-18, a children services agency does not act in "good faith"/ignores the mandates of O.A.C. 5101:2-42-05 when it refuses to place a minor child in substitute care with a relative based solely upon allegations that are in excess of ten (10) years old.

*See* 145 Ohio St.3d 1443, 2016-Ohio-1596, 48 N.E.3d 583.

{¶ 18} The proposition before us relates only to the agency's decision not to place A.J. in Jody's care as a substitute caregiver.  We are not asked to review the agency's conclusion not to place A.J. with Brian and to terminate his parental rights.  We are also not asked to review the court's decision to terminate Brittany's parental rights and grant permanent custody to the agency.  We limit our discussion and holding to the narrow issue before us.

**ANALYSIS**

{¶ 19} We apply the same rules of construction to interpreting administrative regulations as we do to interpreting statutory provisions.  *McFee v. Nursing Care Mgmt. of Am., Inc.*, 126 Ohio St.3d 183, 2010-Ohio-2744, 931

N.E.2d 1069, ¶ 27. Thus, we give the words of the administrative rules their plain and ordinary meaning to discern the intent of the rule. *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54, 386 N.E.2d 1107 (1979).

{¶ 20} Ohio Adm.Code 5101:2-42-18 identifies a number of factors that could disqualify a relative or nonrelative from being named a substitute caregiver. For example, if the relative or nonrelative has been convicted of or pleaded guilty to certain offenses enumerated in the rules, the agency "shall not approve" placement unless conditions set forth in the rules apply. Ohio Adm.Code 5101:2-42-18(H). One of those conditions is that ten years has passed from the time the person was fully discharged from prison or probation. Ohio Adm.Code 5101:2-42-18(H).

{¶ 21} A conviction of or plea of guilty to child endangering under R.C. 2919.22 is one of the enumerated offenses that precludes placement. Ohio Adm.Code 5101:2-42-18(I). But based on Bauer's hearing testimony, the charge did not exclude placement with Jody because nothing in the record established that she had been convicted of or pleaded guilty to the offense, and over ten years had elapsed since she was charged. In fact, Bauer testified that the case, which originated in Richland County, was ultimately closed. Thus, Brittany is correct that the plain language of the rule requires proof of a conviction or guilty plea. And had the trial court relied solely on Bauer's testimony that Jody had been charged with endangering a child, we might accept the argument that she should not have been excluded from being named a substitute caregiver.

{¶ 22} However, Ohio Adm.Code 5101:2-42-18 requires the agency to adhere to additional procedures before placing a child with a relative substitute caregiver. For example, the agency must "[a]ssess the prospective caregiver's ability and willingness to provide care and supervision of the child and to provide a safe and appropriate placement for the child." Ohio Adm.Code 5101:2-42-18(B)(6). Bauer testified that another reason the agency denied placement of A.J.

with Jody was because, at the time of Jody's home study, she did not have any income. Thus, contrary to what the proposition asserts, the allegation of child endangering was not the sole basis for the agency's decision.

{¶ 23} Additionally, to the extent the proposition of law asserts that the agency must act in good faith, we note that the plain language of Ohio Adm.Code 5101:2-42-18 does not use those words. Prior to 1989, the statute governing a motion for permanent custody, R.C. 2151.414, required a juvenile court to find that the agency had made a good faith effort to implement the agency's reunification plan. But the statute was changed to require that an agency make reasonable efforts to implement a reunification plan. Am.Sub.S.B. No. 89, 142 Ohio Laws, Part I, 198, 238-242. *See In re Lacy*, 12th Dist. Butler No. CA93-06-101, 994 WL 372231. We decline to read language into the rules that the General Assembly removed from the corresponding statutes.

{¶ 24} Pursuant to the plain language of the rules, placement of the child with a substitute caregiver is in the agency's discretion based on an assessment of the child's best interest. Ohio Adm.Code 5101:2-42-18(A). In fact, a substitute care setting must be "consistent with the best interest and special needs of the child." Ohio Adm.Code 5101:2-42-05(E).

{¶ 25} Particularly relevant here is that the substitute-care setting must be "the least restrictive, most family-like setting available to meet the child's emotional and physical needs" and must "provide a safe environment for the child." Ohio Adm.Code 5101:2-42-05(E)(1) and (5). Although the rules define the home of a *suitable* relative as the least restrictive setting for a substitute-care setting while an agency has temporary custody, a foster home is on the list of least restrictive placements if there is no suitable relative or nonrelative with whom to place the child. Ohio Adm.Code 5101:2-42-05(F). Thus, Jody's suitability was a key determination for the agency while it had temporary custody of A.J.

**{¶ 26}** Here, the record indicates that Jody's lack of income excluded her as a relative substitute caregiver for A.J.  Jody was not present at the dispositional hearing in October 2014 or at the permanent-custody hearing in January 2015 to contest the agency's determination and the record does not reveal why she was absent.  Nor is there any indication in the record that Brittany or Jody objected to the agency's reunification plan to place A.J. with Brian or that Jody moved for permanent custody of A.J. or objected to reunifying A.J. with Brian.

**{¶ 27}** Although Brittany's proposition addresses substitute-care placement rather than the trial court's permanent-custody determination, a trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion.  *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997). Given the narrow scope of the appeal, and the record before us, we cannot say that the trial court abused its discretion in not finding error in the agency's decision to deny Jody as a substitute caregiver when the agency had temporary custody of A.J.

### CONCLUSION

**{¶ 28}** For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

PFEIFER, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by KENNEDY, J.

————————————

**O'DONNELL, J., dissenting.**

**{¶ 29}** Respectfully, I dissent.

**{¶ 30}** In my view, the Crawford County Department of Job and Family Services ("agency") did not comply with Ohio Adm.Code 5101:2-42-05(E)(1) by selecting a substitute care setting that "[i]s considered the least restrictive, most family-like setting available to meet the child's emotional and physical needs." "The home of a suitable relative" is the least restrictive setting, Ohio Adm.Code

5101:2-42-05(F)(1), and here, in my view, the agency failed to show that Jody J., the great aunt of A.J., is an unsuitable relative.

**{¶ 31}** The agency based its finding of unsuitability on an allegation of child endangering that was more than a decade old and on Jody's lack of income at the time of her home study. The majority correctly concludes the child endangering charge did not preclude placement with Jody (*see* Ohio Adm.Code 5101:2-42-18(H)), but finds "the record indicates that Jody's lack of income excluded her as a relative substitute caregiver for A.J." Majority opinion at ¶ 26.

**{¶ 32}** Here, however, the majority failed to consider that Ohio Adm.Code 5101:2-42-18 contemplates that a relative may be suitable to care for a child but may require financial or other assistance. Division (B)(4) of the regulation mandates that prior to placing a child with a relative substitute caregiver, the agency shall "[p]rovide the prospective caregiver with known information regarding educational, medical, child care, and special needs of the child including information on how to access support services to meet the needs of the child." In addition, division (B)(5) mandates that prior to placement, the agency provide the prospective caregiver with information on how to apply for Ohio Works First child-only financial assistance and Medicaid coverage and for certification as a foster caregiver and information on the requirements for foster caregiver certification, the difference in payment between an Ohio Works First child-only payment and the foster care per diem, and any difference in eligibility for supportive services.

**{¶ 33}** This record is silent about whether the agency gave this information to Jody, and it contains no information about her assets or employment history or prospects aside from the fact that she may have a teaching license. The only information in the record about Jody's financial situation is that she had no income at the time the agency conducted the home study. That fact, standing alone, does not demonstrate Jody is unsuitable to care for A.J.

**{¶ 34}** Accordingly, the record does not demonstrate that the agency complied with Ohio Adm.Code 5101:2-42-05(E)(1), and thus, the court of appeals erroneously concluded that the testimony presented at the permanent custody hearing "established an appropriate basis for rejecting [Jody] as a relative caregiver."  3rd Dist. Crawford No. 3-15-12, 2016-Ohio-248, ¶ 42.  Therefore, I would reverse the judgment of the court of appeals, vacate the judgment of the trial court granting permanent custody to the agency, and instruct the trial court to order a new home study where the agency can evidence its compliance with Ohio Adm.Code 5101:2-42-05(E)(1) and make an appropriate placement consistent with the Ohio Administrative Code.

KENNEDY, J., concurs in the foregoing opinion.

_____

Starkey and Stoll, Ltd., and Geoffrey L. Stoll, for appellant.

Matthew Crall, Crawford County Prosecuting Attorney, and Michael J. Wiener, Assistant Prosecuting Attorney, for appellee Crawford County Job and Family Services.

_____