[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Daily Servs., L.L.C. v. Morrison,* Slip Opinion No. 2018-Ohio-2151.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2151

THE STATE EX REL. DAILY SERVICES, L.L.C., APPELLEE, *v*. MORRISON,[1] ADMR., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Daily Servs., L.L.C. v. Morrison,* Slip Opinion No. 2018-Ohio-2151.]**

*Workers' compensation—Bureau of Workers' Compensation did not abuse its discretion when it determined that short-term temp agency wholly succeeded the business operations of long-term temp agency for purposes of transferring long-term agency's unpaid premium liabilities to short-term agency under former Ohio Adm.Code 4123-17-02(C)(1)—Court of appeals' judgment granting writ of mandamus reversed.*

(No. 2017-0251—Submitted February 13, 2018—Decided June 6, 2018.)

APPEAL from the Court of Appeals for Franklin County,

No. 14AP-405, 2016-Ohio-8333.

_____

[1] Under S.Ct.Prac.R. 4.06(B), Sarah D. Morrison, the current administrator of the Bureau of Workers' Compensation, is automatically substituted for Stephen Buehrer, the former administrator, as a party to this action.

_____

**Per Curiam.**

{¶ 1} Appellant, the administrator of the Bureau of Workers' Compensation, appeals the judgment of the Tenth District Court of Appeals granting a writ of mandamus that orders the administrator to vacate the November 14, 2013 order of the administrator's designee finding that appellee, Daily Services, L.L.C., was the successor to I-Force, L.L.C., and was responsible for I-Force's rights and obligations under former Ohio Adm.Code 4123-17-02(C), 2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006, and to enter an order finding that Daily Services is not the successor to I-Force.

{¶ 2} For the reasons that follow, we reverse the judgment of the court of appeals and deny the writ of mandamus.

### Factual and Procedural Background

{¶ 3} Daily Services is a temporary-employment agency owned by Ryan Mason that focuses on short-term or daily staffing. Mason also owned another temporary-employment agency called I-Force that focused on long-term staffing. The businesses were located in adjacent buildings on Morse Road in Columbus. Each agency had its own workers' compensation policy.

{¶ 4} In 2008, I-Force's workers' compensation premium increased to approximately $3.5 million based on its poor claims history. I-Force did not pay its premium for the second half of 2008, which was due by February 28, 2009.

{¶ 5} During an audit of Daily Services conducted in April 2009, the bureau learned that I-Force had closed over the weekend of March 21-22, 2009, but that the business appeared to be continuing to operate through Daily Services. Consequently, the bureau concluded that Daily Services was the successor-in-interest to I-Force and therefore was responsible for all of I-Force's existing and future financial rights and obligations, effective March 23, 2009. In addition, the

bureau combined the experience of the two companies pursuant to Ohio Adm.Code 4123-17-02(B), to establish the premium rate of Daily Services, as the successor.

{¶ 6} On June 1, 2009, Daily Services received from the bureau an invoice for more than $3.48 million for I-Force's unpaid premiums. On June 15, 2009, Daily Services filed a protest objecting to the bureau's determination that it was the successor to I-Force. The protest was referred to an adjudicating committee of the bureau for a hearing on the merits of the bureau's decision. The committee affirmed the bureau's decision to combine the experience of the two entities. Daily Services did not appeal the committee's order.

{¶ 7} The bureau held another hearing on March 20, 2013, to resolve the issue of successor liability after it was determined in related collection proceedings that the adjudicating committee had not decided the successorship issue from the 2009 protest. Two of the bureau's employees testified on its behalf: Nancy Archer, who conducted the 2009 investigation into I-Force's transfer of operations to Daily Services, and Heidi Pack, who reviewed the information from Archer and determined that Daily Services had successor liability. Daily Services presented no witnesses.

{¶ 8} Following the hearing, the adjudicating committee again denied the June 2009 protest. The committee concluded that Mason's maneuvering of I-Force's business operations to Daily Services amounted to a voluntary transfer of business operations. Thus, the committee determined that Daily Services was the successor to I-Force under former Ohio Adm.Code 4123-17-02(C)(1).

{¶ 9} Daily Services appealed. The matter was referred to the administrator's designee, who determined that the adjudicating committee used the proper legal standard and that Daily Services wholly succeeded I-Force for purposes of the transfer of I-Force's rights and obligations under the workers' compensation law, including I-Force's unpaid premiums, pursuant to former Ohio Adm.Code 4123-17-02(C)(1) ("Where one employer wholly succeeds another in

the operation of a business, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law").

{¶ 10} The designee itemized the evidence set forth by the adjudicating committee, which included Daily Services' hiring of I-Force's permanent staff over the weekend of March 21-22, 2009, its assumption of I-Force's property and computer leases, its payment of I-Force's federal quarterly taxes, and its purchase of the right to use the "I-Force" name. The designee also identified evidence that Daily Services had added manual codes in preparation for acquiring I-Force's clients, had contacted I-Force's clients to have them sign new contracts with a name change only, and had ranked the profitability of I-Force's clients. And the designee noted that Mason ceased all I-Force business as of March 23, 2009.

{¶ 11} Daily Services filed a complaint for a writ of mandamus alleging that the bureau's denial of the 2009 protest was an abuse of its discretion.

{¶ 12} The magistrate assigned to the case at the court of appeals noted that former Ohio Adm.Code 4123-17-02(C)(1), in effect in 2009, did not define "wholly succeeds" and that case law provided little guidance on the meaning of the phrase. But, the magistrate noted, the rule was amended in 2010 to expressly provide that "an employer wholly succeeds another in the operation of a business when '[t]he succession transaction is entered into for the purpose of escaping obligations under the workers' compensation law.' " *State ex rel. Daily Servs., L.L.C. v. Buehrer*, 2016-Ohio-8333, ¶ 66, quoting former Ohio Adm.Code 4123-17-02(C)(1)(d), 2009-2010 Ohio Monthly Record 2-3058, effective July 5, 2010. According to the magistrate, the bureau's findings would have been proper under this version of the rule but were not relevant under the version of the rule that was in effect in 2009. Thus, the magistrate concluded that the facts did not support a finding that Daily Services wholly succeeded I-Force.

{¶ 13} The court of appeals overruled the bureau's objections and adopted the magistrate's decision. The court acknowledged that Daily Services

4

"orchestrated a business strategy to take over the most profitable aspects of I-Force's business" but concluded that doing so did not establish that Daily Services had "wholly succeeded" the business operations of I-Force. *Id.* at ¶ 12. The court of appeals therefore granted a writ of mandamus ordering the bureau to vacate the order of the administrator's designee.

{¶ 14} This matter is before this court on the direct appeal of the bureau. A cross-appeal filed by Daily Services was dismissed for failure to prosecute. 149 Ohio St.3d 1424, 2017-Ohio-4132, 75 N.E.3d 1279.

**Analysis**

{¶ 15} The Workers' Compensation Fund is funded by compulsory contributions from employers and is administered by the state. Ohio Constitution, Article II, Section 35. The bureau is required to adopt rules with respect to the collection, maintenance, and disbursements of the fund, including special rules "necessary to safeguard the fund and that are just in the circumstances." R.C. 4123.32(B). These special rules cover "the rates to be applied where one employer takes over the occupation or industry of another," and "the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, * * * the employer's account." *Id.*

{¶ 16} This case involves former Ohio Adm.Code 4123-17-02(C), which provided:

> Succeeding employers—risk coverage transfer.
>
> (1) Whenever one employer succeeds another employer in the operation of a business in whole or in part, the successor shall notify the bureau of the succession. *Where one employer wholly succeeds another in the operation of a business, the bureau shall transfer the predecessor's rights and obligations under the*

*workers' compensation law.* The successor shall be credited with any credits of the predecessor, including the advance premium security deposit of the predecessor. This paragraph shall apply where an employer wholly succeeds another employer in the operation of a business on or after September 1, 2006.

(Emphasis added.) 2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006.[2]

{¶ 17} The issue before us is whether the bureau abused its discretion when it determined that Daily Services "wholly succeed[ed]" I-Force in the "operation of a business" for purposes of transferring I-Force's unpaid premium liabilities to Daily Services pursuant to former Ohio Adm.Code 4123-17-02(C)(1). An abuse of discretion occurs when there is no evidence upon which the bureau could have based its decision. *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster*, 22 Ohio St.3d 191, 193, 489 N.E.2d 288 (1986). So long as there is some evidence in the record to support the decision, then the bureau acted within its discretion and the granting of a writ of mandamus is not warranted. *State ex rel. Secreto v. Indus. Comm.*, 80 Ohio St.3d 581, 582-583, 687 N.E.2d 715 (1997).

{¶ 18} The bureau argues that as part of its statutory duty to safeguard the Workers' Compensation Fund, it is within its discretion under the version of former Ohio Adm.Code 4123-17-02 applicable to this case to deem an employer to have "wholly succeeded" another when nothing remains of the predecessor employer after the successor employer assumes the predecessor's business operations. Thus, the bureau contends, even if Daily Services did not assume every customer,

---

[2] Ohio Adm.Code 4123-17-02(C) was amended, effective July 2010, to require transfer of the predecessor's rights and obligations when the succession transaction was entered into for the purpose of escaping financial obligations under the workers' compensation law. Former Ohio Adm.Code 4123-17-02(C)(1), 2009-2010 Ohio Monthly Record 2-3058, effective July 5, 2010. The bureau did not apply this provision and does not contend that it applies to the facts of this case.

employee, or lease held by I-Force, it wholly succeeded the business operations of I-Force, which no longer existed after the weekend transfer in March 2009. The bureau also maintains that its statutory obligation to safeguard the fund authorizes it to find that an employer is a "successor in interest" when that employer attempts to evade workers' compensation liabilities.

{¶ 19} We agree.

*Daily Services "wholly succeeded" the business operations of I-Force even if it did not assume every customer, employee, or lease held by I-Force before the transfer*

{¶ 20} This court has held that a successor-in-interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part. *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.*, 62 Ohio St.3d 81, 83-84, 578 N.E.2d 458 (1991). The transfer must be voluntary. *State ex rel. Valley Roofing, L.L.C. v. Bur. of Workers' Comp.*, 122 Ohio St.3d 275, 2009-Ohio-2684, 910 N.E.2d 1018, ¶ 5. A transfer may be in a manner other than by a purchase. *State ex rel. K & D Group, Inc. v. Buehrer*, 135 Ohio St.3d 257, 2013-Ohio-734, 985 N.E.2d 1270, ¶ 13.

{¶ 21} The bureau maintains that the transfer of business operations from one entity to another does not require counting the assets that the successor acquired. The bureau argues that the evidence established that over the course of one weekend, Daily Services assumed I-Force's business functions, including many of its employees, leases, and best customers. The bureau further argues that because I-Force then ceased to exist, Daily Services wholly succeeded the business operations of I-Force.

{¶ 22} The evidence supports this conclusion. The administrator's designee detailed the transfer of I-Force's permanent employees, leases, and contracts to Daily Services over the weekend before I-Force ceased doing business, Mason's planning the transition in advance by establishing a system ranking I-Force's

customers based on creditworthiness and payment history, and Mason's adding new manual codes to Daily Services' account in preparation for workers' compensation coverage for those customers moving from I-Force to Daily Services.

{¶ 23} The administrator's designee also relied on statements from I-Force's regional supervisors who were told to contact I-Force's clients and have them sign new contracts informing them that it was a name change only with no interruption of services. Finally, the evidence indicated that on March 23, 2009, Mason ceased operating I-Force altogether.

{¶ 24} Thus, even if Daily Services did not assume every customer, employee, or lease held by I-Force, there was some evidence to support the conclusion that Daily Services wholly succeeded I-Force for purposes of the version of former Ohio Adm.Code 4123-17-02(C) applicable here. As of March 23, 2009, nothing remained of I-Force except the business functions that were assumed by Daily Services. The bureau did not abuse its discretion when it determined that Daily Services wholly succeeded the business operations of I-Force.

*The bureau's statutory obligation to safeguard the Workers' Compensation Fund authorizes it to find that an employer is a "successor in interest" when that employer attempts to evade workers' compensation liabilities*

{¶ 25} The bureau has a fiduciary responsibility to safeguard the Workers' Compensation Fund. R.C. 4123.32(B); *State ex rel. Harry Wolsky Stair Builder, Inc., v. Indus. Comm.*, 58 Ohio St.3d 222, 224, 569 N.E.2d 900 (1991). This responsibility includes detecting and thwarting an employer's scheme to avoid its workers' compensation liabilities.

{¶ 26} Below, the court of appeals acknowledged that Mason intentionally orchestrated a business strategy for Daily Services to take over the most profitable aspects of I-Force's business by cherry-picking customers, employees, and business locations. Under these circumstances, the bureau did not abuse its

8

discretion when it concluded that Daily Services was the successor-in-interest to I-Force based on the evidence that Mason was attempting to evade workers' compensation liabilities.

**{¶ 27}** When an order is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order. *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, 846 N.E.2d 1245, ¶ 9. The final order of the administrator's designee, affirming the March 20, 2013 decision of the adjudicating committee, concluded that the adjudicating committee correctly analyzed the evidence in light of the proper standard in effect at the time of the transfer—whether Daily Services wholly succeeded I-Force—under the version of former Ohio Adm.Code 4123-17-02(C)(1) at issue here and that the committee based its decision on extensive evidence in the record. Therefore, the bureau did not abuse its discretion, and Daily Services failed to demonstrate that it was entitled to relief in mandamus.

**{¶ 28}** We reverse the judgment of the court of appeals and deny the writ.

Judgment reversed
and writ denied.

O'CONNOR, C.J., and FRENCH and DEGENARO, JJ., concur.

FISCHER, J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion joined by O'DONNELL and DEWINE, JJ.

_____

**KENNEDY, J., dissenting.**

**{¶ 29}** Because the plain language of former Ohio Adm.Code 4123-17-02, 2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006, compels the conclusion that appellee, Daily Services, L.L.C., did not wholly succeed I-Force, L.L.C., in the operation of its business, I dissent. Accordingly, I would affirm the judgment of the Tenth District Court of Appeals granting a writ of mandamus to

compel the Bureau of Workers' Compensation ("BWC") to vacate its order finding that Daily Services is I-Force's successor-in-interest.

**{¶ 30}** R.C. 4123.32 directs appellant, the administrator of the BWC, to adopt rules concerning

> the collection, maintenance, and disbursements of the state insurance fund including * * * :
>
> > * * *
>
> (B) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and *the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter*.

(Emphasis added.)

**{¶ 31}** We have recognized that R.C. 4123.32(B) "is an enabling statute and does not independently impose any employer obligation." *State ex rel. Health Care Facilities, Inc. v. Bur. of Workers' Comp.*, 80 Ohio St.3d 642, 646, 687 N.E.2d 763 (1998).

**{¶ 32}** The BWC's administrator exercised this authority to promulgate rules regarding successor liability and adopted former Ohio Adm.Code 4123-17-02(C)(1), which at the times relevant to this appeal provided:

> Whenever one employer succeeds another employer in the operation of a business in whole or in part, the successor shall notify the bureau of the succession. Where one employer wholly succeeds another in the operation of a business, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law.

2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006.

{¶ 33} As we recently explained in *In re A.J.*, "[w]e apply the same rules of construction to interpreting administrative regulations as we do to interpreting statutory provisions." 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 19. We therefore "give the words of the administrative rules their plain and ordinary meaning to discern the intent of the rule." *Id.* And when the language of a rule is plain and unambiguous and conveys a clear and definite meaning, it must be applied, not interpreted. *See Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000); *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 34} Former Ohio Adm.Code 4123-17-02(C)(1) is plain and unambiguous. The word "wholly" means "to the full or entire extent: without diminution or reduction: ALTOGETHER, COMPLETELY, TOTALLY." (Capitalization sic.) *Webster's Third New International Dictionary* 2612 (2002). And we have explained that for purposes of workers' compensation law, succession is not the same as the legal concept of corporate succession but, rather, involves the voluntary act of one employer transferring its business operations to another. *State ex rel. K&D Group, Inc. v. Buehrer*, 135 Ohio St.3d 257, 2013-Ohio-734, 985 N.E.2d 1270, ¶ 13, 15. Successor liability therefore applies only when one employer voluntarily transfers its *entire* business operations to another.

{¶ 35} Moreover, a comparison of R.C. 4123.32(B) and former Ohio Adm.Code 4123-17-02(C)(1) reveals that although the General Assembly authorized the administrator to impose successor liability when the employer "transfers a business in whole or in part or otherwise reorganizes the business," the rule imposed liability only "[w]here one employer wholly succeeds another in the operation of a business." Similarly, the rule required a successor to notify the BWC when it succeeded the business operations of another "in whole or in part," yet in the next sentence, the rule provided for successor liability only when one employer wholly succeeded another. The use of different words conveys the intent that those words have different meanings. *Huntington Natl. Bank v. 199 S. Fifth St. Co.*, 10th Dist. Franklin No. 10AP-1082, 2011-Ohio-3707, ¶ 18; *State v. Steele*, 8th Dist. Cuyahoga No. 105085, 2017-Ohio-7605, ¶ 15. Therefore, succession in part, a business reorganization, or anything short of a total transfer is not sufficient to establish that one employer has wholly succeeded another in the operation of a business.

{¶ 36} In this case, according to Heidi Pack, the BWC employee who determined that Daily Services was I-Force's successor, I-Force's "business" was providing its customers with temporary workers. And the most important aspect of that business was I-Force's relationship with its customers; she testified that "if they didn't take any of the clients over there, * * * there's no successorship there." However, Rick Fazzina, chief financial officer of Daily Services, averred that the company "captured thirty-four point seven percent (34.7%) of I-Force's payroll when it closed." Reviewing comparisons of Daily Services' and I-Force's customers, the administrator's designee found that "on day one of business, Daily Services had approximately half of I-Force's business" and "30 percent of the customers." And the lead opinion itself recognizes that Daily Services "cherry-pick[ed]" I-Force's customers. Lead opinion at ¶ 26. Therefore, because Daily

12

Services did not receive I-Force's entire business—i.e., its relationship with its customers—it did not wholly succeed I-Force in the operation of that business.

{¶ 37} Moreover, Daily Services entered new contracts with a number of I-Force's former employees and clients and assumed some of its business leases. Other than the transfer of the right to use the I-Force name, there is no asset-purchase agreement or assignment of contractual rights in this record. In fact, at the hearing before the BWC adjudicating committee, the BWC's auditor, Nancy Archer, testified that three of I-Force's employees were bound by noncompete agreements and did not believe that they could sign new contracts with Daily Services.

{¶ 38} In *State ex rel. K&D Group, Inc.*, we rejected the view that one employer, K&D Group, wholly succeeded the business operations of another employer, Mid-America Management Corporation, when K&D Group "hired some former employees of Mid-America, assumed management of the leases that the prior apartment-complex owner had with its tenants, and operate[d] under the same workers' compensation manual numbers as Mid-America." 135 Ohio St.3d 257, 2013-Ohio-734, 985 N.E.2d 1270, at ¶ 16. Rather, we concluded that "K&D Group merely contracted with the new owner to assume management of the existing apartment complex. Thus, the [BWC] abused its discretion when it treated K&D Group as a successor in interest." *Id.*

{¶ 39} Similarly, here, I-Force did not transfer its entire business operations, but rather, Daily Services entered new contracts with some of I-Force's former employees, clients, and lessors. As in *K&D Group*, that is not sufficient to demonstrate that Daily Services wholly succeeded I-Force's business operations.

{¶ 40} The lead opinion also states that the BWC "did not abuse its discretion when it concluded that Daily Services was the successor-in-interest to I-Force based on the evidence that [Ryan] Mason [the owner of Daily Services and I-Force] was attempting to evade workers' compensation liabilities." Lead opinion

at ¶ 26. In essence, the lead opinion concludes that regardless of the meaning of the rule, the BWC's decision to declare Daily Services liable for I-Force's obligations is justified by the BWC's fiduciary duty to protect the state insurance fund. However, the administrator promulgated former Ohio Adm.Code 4123-17-02(C)(1) as the means of protecting the fund in these circumstances, and the "BWC and the commission must follow their own rules as written. * * * They cannot give selective effect to provisions to produce a desired result or otherwise change them without complying with the R.C. Chapter 119 rule-making procedure," *State ex rel. Health Care Facilities, Inc.*, 80 Ohio St.3d at 647, 687 N.E.2d 763.

{¶ 41} This does not mean that I-Force can evade its liability under workers' compensation law. However, rather than taking the shortcut of invoicing a separate corporate entity that received none of I-Force's corporate assets other than the right to use the I-Force name, the BWC has to pursue other remedies to recoup the unpaid premiums from I-Force (or its owner, if it can pierce the corporate veil). *See Bur. of Workers' Comp. v. Mullins*, 140 Ohio App.3d 375, 377-378, 747 N.E.2d 856 (4th Dist.2000) (explaining that the BWC could seek recovery for unpaid premiums through garnishment proceedings).

{¶ 42} Accordingly, I would affirm the judgment of the court of appeals granting a writ of mandamus to compel the BWC to vacate its order holding Daily Services liable for I-Force's unpaid workers' compensation premiums.

O'DONNELL and DEWINE, JJ., concur in the foregoing opinion.

_____

Michael DeWine, Attorney General, and John Smart, Assistant Attorney General; and Porter, Wright, Morris & Arthur, L.L.P., L. Bradfield Hughes, James A. King, and David S. Bloomfield Jr., for appellant.

_____