Kennedy, J., dissenting.
{¶ 29} Because the plain language of former Ohio Adm.Code 4123-17-02, 2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006, compels the conclusion that appellee, Daily Services, L.L.C., did not wholly succeed I-Force, L.L.C., in the operation of its business, I dissent. Accordingly, I would affirm the judgment of the Tenth District Court of Appeals granting a writ of mandamus to compel the Bureau of Workers' Compensation ("BWC") to vacate its order finding that Daily Services is I-Force's successor-in-interest.
{¶ 30} R.C. 4123.32 directs appellant, the administrator of the BWC, to adopt rules concerning
*505 the collection, maintenance, and disbursements of the state insurance fund including * * * :
* * *
*119 (B) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter.
(Emphasis added.)
{¶ 31} We have recognized that R.C. 4123.32(B)"is an enabling statute and does not independently impose any employer obligation." State ex rel. Health Care Facilities, Inc. v. Bur. of Workers' Comp. , 80 Ohio St.3d 642, 646, 687 N.E.2d 763 (1998).
{¶ 32} The BWC's administrator exercised this authority to promulgate rules regarding successor liability and adopted former Ohio Adm.Code 4123-17-02(C)(1), which at the times relevant to this appeal provided:
Whenever one employer succeeds another employer in the operation of a business in whole or in part, the successor shall notify the bureau of the succession. Where one employer wholly *120 succeeds another in the operation of a business, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law.
2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006.
{¶ 33} As we recently explained in In re A.J. , "[w]e apply the same rules of construction to interpreting administrative regulations as we do to interpreting statutory provisions." 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 19. We therefore "give the words of the administrative rules their plain and ordinary meaning to discern the intent of the rule." Id. And when the language of a rule is plain and unambiguous and conveys a clear and definite meaning, it must be applied, not interpreted. See Symmes Twp. Bd. of Trustees v. Smyth , 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000) ; Sears v. Weimer , 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.
*506 {¶ 34} Former Ohio Adm.Code 4123-17-02(C)(1) is plain and unambiguous. The word "wholly" means "to the full or entire extent: without diminution or reduction: ALTOGETHER, COMPLETELY, TOTALLY. " (Capitalization sic.) Webster's Third New International Dictionary 2612 (2002). And we have explained that for purposes of workers' compensation law, succession is not the same as the legal concept of corporate succession but, rather, involves the voluntary act of one employer transferring its business operations to another. State ex rel. K & D Group, Inc. v. Buehrer , 135 Ohio St.3d 257, 2013-Ohio-734, 985 N.E.2d 1270, ¶ 13, 15. Successor liability therefore applies only when one employer voluntarily transfers its entire business operations to another.
{¶ 35} Moreover, a comparison of R.C. 4123.32(B) and former Ohio Adm.Code 4123-17-02(C)(1) reveals that although the General Assembly authorized the administrator to impose successor liability when the employer "transfers a business in whole or in part or otherwise reorganizes the business," the rule imposed liability only "[w]here one employer wholly succeeds another in the operation of a business." Similarly, the rule required a successor to notify the BWC when it succeeded the business operations of another "in whole or in part," yet in the next sentence, the rule provided for successor liability only when one employer wholly succeeded another. The use of different words conveys the intent that those words have different meanings. Huntington Natl. Bank v. 199 S. Fifth St. Co. , 10th Dist. Franklin No. 10AP-1082, 2011-Ohio-3707, 2011 WL 3210289, ¶ 18 ; State v. Steele , 8th Dist. Cuyahoga No. 105085, 2017-Ohio-7605, 2017 WL 4074616, ¶ 15. Therefore, succession in part, a business reorganization, or anything short of a total transfer is not sufficient to establish that one employer has wholly succeeded another in the operation of a business.
{¶ 36} In this case, according to Heidi Pack, the BWC employee who determined that Daily Services was I-Force's successor, I-Force's "business" was providing its customers with temporary workers. And the most important aspect of that business was I-Force's relationship with its customers; she testified that "if they didn't take any of the clients over there, * * * there's no successorship there." However, Rick Fazzina, chief financial officer of Daily Services, averred that the company "captured thirty-four point seven percent (34.7%) of I-Force's payroll when it closed." Reviewing comparisons of Daily Services' and I-Force's customers, the administrator's designee found that "on day one of business, Daily Services had approximately half of I-Force's business" and "30 percent of the customers." And the lead opinion itself recognizes that Daily Services "cherry-pick[ed]" I-Force's customers. Lead opinion at ¶ 26. Therefore, because Daily Services did not receive I-Force's entire business-i.e., its relationship with its customers-it did not wholly succeed I-Force in the operation of that business.
*507 {¶ 37} Moreover, Daily Services entered new contracts with a number of I-Force's former employees and clients and assumed some of its business leases. Other than the transfer of the right to use the I-Force name, there is no asset-purchase agreement or assignment of contractual rights in this record. In fact, at the hearing before the BWC adjudicating committee, the BWC's auditor, Nancy Archer, testified that three of I-Force's employees were bound by noncompete agreements and did not believe that they could sign new contracts with Daily Services.
{¶ 38} In State ex rel. K & D Group, Inc. , we rejected the view that one employer, K & D Group, wholly succeeded the business operations of another employer, Mid-America Management Corporation, when K & D Group "hired some former employees of Mid-America, assumed management of the leases that the prior apartment-complex owner had with its tenants, and operate[d] under the same workers' compensation manual numbers as Mid-America." 135 Ohio St.3d 257, 2013-Ohio-734, 985 N.E.2d 1270, at ¶ 16. Rather, we concluded that "K & D Group merely contracted with the new owner to assume management of the existing apartment complex. Thus, the [BWC] abused its discretion when it treated K & D Group as a successor in interest." Id.
{¶ 39} Similarly, here, I-Force did not transfer its entire business operations, but rather, Daily Services entered new contracts with some of I-Force's former employees, clients, and lessors. As in K & D Group , that is not sufficient to demonstrate that Daily Services wholly succeeded I-Force's business operations.
{¶ 40} The lead opinion also states that the BWC "did not abuse its discretion when it concluded that Daily Services was the successor-in-interest to I-Force based on the evidence that [Ryan] Mason [the owner of Daily Services and I-Force] was *121 attempting to evade workers' compensation liabilities." Lead opinion at ¶ 26. In essence, the lead opinion concludes that regardless of the meaning of the rule, the BWC's decision to declare Daily Services liable for I-Force's obligations is justified by the BWC's fiduciary duty to protect the state insurance fund. However, the administrator promulgated former Ohio Adm.Code 4123-17-02(C)(1) as the means of protecting the fund in these circumstances, and the "BWC and the commission must follow their own rules as written. * * * They cannot give selective effect to provisions to produce a desired result or otherwise change them without complying with the R.C. Chapter 119 rule-making procedure," State ex rel. Health Care Facilities, Inc. , 80 Ohio St.3d at 647, 687 N.E.2d 763.
{¶ 41} This does not mean that I-Force can evade its liability under workers' compensation law. However, rather than taking the shortcut of invoicing a separate corporate entity that received none of I-Force's corporate assets other than the right to use the I-Force name, the BWC has to pursue other remedies *508 to recoup the unpaid premiums from I-Force (or its owner, if it can pierce the corporate veil). See Bur. of Workers' Comp. v. Mullins , 140 Ohio App.3d 375, 377-378, 747 N.E.2d 856 (4th Dist.2000) (explaining that the BWC could seek recovery for unpaid premiums through garnishment proceedings).
{¶ 42} Accordingly, I would affirm the judgment of the court of appeals granting a writ of mandamus to compel the BWC to vacate its order holding Daily Services liable for I-Force's unpaid workers' compensation premiums.
O'Donnell and DeWine, JJ., concur in the foregoing opinion.